873 So.2d 739 (2004)
BOBBY AND RAY WILLIAMS PARTNERSHIP, L.L.P., Plaintiff-Appellant
v.
THE SHREVEPORT LOUISIANA HAYRIDE CO. L.L.C., et al., Defendant-Appellee.
No. 38,224 CA.
Court of Appeal of Louisiana, Second Circuit.
April 21, 2004.
*740 William D. Dyess, Baton Rouge, Counsel for Appellant.
*741 Jerald R. Harper, Counsel for Appellee, Foundation of Arts, Music and Entertainment of Shreveport-Bossier.
William Lanigan, Shreveport, Counsel for Appellee, Louisiana Hayride Co., L.L.C., Warwick Production, Inc., Margaret Lewis Warwick, Alton Warwick.
Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
The plaintiffs, Bobby and Ray Williams Partnership, L.L.P. and Bobby Williams, individually, appeal a judgment in favor of the defendants, The Shreveport Louisiana Hayride Company, L.L.C., Warwick Productions, Inc., Margaret Warwick, A. Alton Warwick (collectively referred to as "Warwicks") and Foundation of Arts, Music and Entertainment of Shreveport-Bossier ("FAME"). The district court granted the defendants' exceptions of no cause of action and awarded attorney fees to FAME. For the following reasons, we affirm.

FACTS
This case involves a dispute over the right to use the trademark "The Louisiana Hayride," which was the name of a weekly radio program featuring country music performers playing on stage at the Municipal Auditorium in Shreveport, Louisiana. The Hayride music shows were sponsored and broadcast by local radio station KWKH from approximately 1948 to 1960. The Louisiana Hayride gained a reputation as a springboard for the successful careers of many performers, including Elvis Presley, Johnny Cash, Hank Williams and George Jones.
After a period of inactivity, the successor in interest to KWKH, David Kent, used the name "Louisiana Hayride" to identify live music stage shows he produced in Bossier Parish. In 1985, Kent registered the trademark "The Louisiana Hayride" with the Louisiana Secretary of State. In 1987, Kent sold his interest in Hayride assets, including the right to use the trademark, to Louisiana Hayride Productions, Ltd. ("LHP"), which used the property as security for a loan. LHP went out of business and defaulted on the loan.
Subsequently, Bobby and Ray Williams Partnership ("Williams Partnership") purchased the defaulted promissory note from the bank and seized the assets of LHP. In April 1992, Williams Partnership bought the seized assets in a sheriff's sale. In May 1992, the secretary of state assigned the registration of the "Louisiana Hayride" trademark to Williams Partnership.
During the late 1950s, Margaret Lewis had been a performer in the KWKH Louisiana Hayride shows. After working as a songwriter in Nashville, she returned to Shreveport in 1981 to marry A. Alton Warwick. In 1988, she began using the trademark Louisiana Hayride in connection with the "Louisiana Hayride Band," which performed in music revues that were produced by Warwick. In January 1992, Warwick performed with her Louisiana Hayride Band in a "Louisiana Hayride Show" at a state tourism event in Lafayette, Louisiana.
In 1993, Warwick applied to the United States Patent and Trademark Office ("USPTO") to register the trademark "The Shreveport Louisiana Hayride" along with the derivative marks. In May 1995, Warwick received federal registration of this mark for use with entertainment services in the nature of a musical revue. Subsequently, Margaret and Alton Warwick formed the Shreveport Louisiana Hayride Company, L.L.C. ("SLH"). In 1995, after receiving a "cease and desist" letter from Williams Partnership regarding their use of the Louisiana Hayride mark, the Warwicks *742 filed suit in federal court against Williams Partnership and Bobby Williams alleging trademark infringement. In July 1997, the parties signed a settlement agreement, which was incorporated into a consent judgment providing that the Warwicks and SLH "shall retain all their rights" to their previously registered United States trademark known as "The Shreveport Louisiana Hayride." The judgment further ordered that Williams Partnership shall have the exclusive right to a federally registered trademark "The Louisiana Hayride" for entertainment products only, as defined in the judgment, "subject to [a] concurrent use agreement" between Williams Partnership and SLH. However, the parties did not execute a concurrent use agreement.
In 1997, Margaret Warwick was one of the founders of FAME, a non-profit corporation formed to create an historic music district in Shreveport. In May 2002, the plaintiff, Williams Partnership, filed a petition for a temporary restraining order against the defendants, the Warwicks and FAME. Plaintiff sought to enjoin the performance of a "Louisiana Hayride Show" produced by Warwicks and scheduled in connection with a music conference sponsored by FAME. Proceeds from the concert were to benefit FAME. In its petition, plaintiff alleged that it possessed the exclusive right to use the Louisiana Hayride trademark and that the Warwicks and FAME were acting together in the commission of unfair trade practices. The district court denied the application for a temporary restraining order.
Subsequently, FAME filed an exception of vagueness of the petition and peremptory exceptions of no cause and no right of action. The Warwicks also filed exceptions of no cause and no right of action and filed a reconventional demand seeking damages for plaintiff's alleged interference with their use of the trademark the Shreveport Louisiana Hayride. In July 2002, the district court sustained the Warwicks' exception of no cause of action and allowed plaintiff fifteen days to amend the petition. Plaintiff filed an amended and supplemental petition adding Bobby Williams individually as a party plaintiff and alleging that the Warwicks and FAME had infringed the plaintiffs' trademark rights and violated the Unfair Trade Practices and Consumer Protection Act by producing a music show with a deceptively similar trade name and using FAME as an "alter ego" to solicit funds for the gain of the Warwicks.
FAME again filed an exception of vagueness and the Warwicks filed an exception of no cause of action. The district court sustained these exceptions and again gave plaintiffs fifteen days to amend the petition. After the plaintiffs filed a second amended petition, the Warwicks and FAME filed exceptions of no cause and no right of action. In March 2003, the district court rendered judgment granting the exceptions of no cause of action and dismissing the plaintiffs' complaint with prejudice. FAME filed a motion for attorney fees alleging that the plaintiffs had acted in bad faith in filing the lawsuit. Finding that plaintiffs had not acted in good faith in pursuing the lawsuit against FAME, the court rendered judgment awarding attorney fees of $18,332.50 to FAME. The plaintiffs appeal the judgments.

DISCUSSION
The plaintiffs contend the trial court erred in granting the exceptions of no cause of action filed by defendants. Plaintiffs argue that their petition sufficiently stated a cause of action against the defendants for unfair and deceptive trade practices by alleging that defendants had infringed on the plaintiffs' right to use the *743 Louisiana Hayride trademark and that the Warwicks had improperly benefited from proceeds paid to the non-profit corporation FAME.
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy upon the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993); Western Development Group, Inc. v. Shlosman, 32,343 (La.App.2d Cir.9/22/99), 744 So.2d 197. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. Thus, the court reviews the petition and accepts well-pleaded allegations of fact as true and the issue at trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels, supra. Generally, an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise of the defense, or unless the plaintiff does not have a cause of action under any evidence admissible under the pleading. Western Development Group, supra; Succession of Fragala, 28,663 (La.App.2d Cir.9/27/96), 680 So.2d 1345.
The term "trademark" means any name, symbol, device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others. LSA-R.S. 51:211(A). A trade name is a word, name, symbol, device or any combination thereof used by a person to identify his business or occupation and distinguish it from others. LSA-R.S. 51:211(D). A trademark shall be deemed to be "used" in this state (1) on goods when placed thereon or their containers or on the affixed labels and such goods are sold or distributed in this state, and (2) on services when it is used or displayed in the sale or advertising of such services performed in this state. LSA-R.S. 51:211(H).
A mark by which goods or services of any applicant for registration may be distinguished shall not be registered if it consists of or comprises a mark which so resembles a mark registered in this state, or a mark or trade name previously used in this state by another and not abandoned, as to likely cause confusion, mistake or to deceive when applied to the applicant's goods or services. LSA-R.S. 51:212(6). Subject to the statutory limitations, any person who adopts and uses a mark or name in this state may file with the secretary of state an application for registration of that mark or name. LSA-R.S. 51:214.
Any person who shall use without the consent of the registrant any reproduction, copy or imitation of a mark registered with the state in connection with the sale or advertising of any goods or services, or where such use is likely to cause confusion or mistake as to the origin of such goods or services, shall be liable in a civil action by the owner of such registered mark for any and all remedies provided under the law. LSA-R.S. 51:222. Any owner of a registered mark may file suit to enjoin the use, display or sale of any imitations thereof and the court may grant injunctions to restrain such use or display. LSA-R.S. 51:223.
However, the mere registration of a trademark confers only procedural rights and does not create or confer substantive proprietary rights of ownership in the mark. Substantive rights in the mark arise only from the use of the mark and not from registration. Givens Jewelers Inc. v. Givens, 380 So.2d 1227 (La.App. 2d Cir.1980).
*744 The Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. LSA-R.S. 51:1405. The language of this legislation is broad and does not specify particular violations. Thus, what constitutes an unfair trade practice is to be determined on the facts of each case. Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362 (La.App. 2d Cir.1988). Under LUTPA, an unfair act is conduct which offends established public policy and which is unethical, oppressive, unscrupulous or substantially injurious to consumers or business competitors. Monroe Medical Clinic, supra.
Any person who suffers an ascertainable loss of money or movable property as a result of unlawful trade practices may bring an action individually to recover damages. LSA-R.S. 51:1409. This language has been held to confer a private right of action to consumers and business competitors. Monroe Medical Clinic, supra.
In the original petition, plaintiffs alleged that they purchased the rights to the trademark "The Louisiana Hayride" in a sheriff's sale and that the state registration of the mark was assigned to them in May 1992. They alleged that their use of the trademark in commerce was shown by their licensing of photographs of Hayride performers and of banners in 1992, their renewal of the state registration of the mark in 1995 and their execution of a series of "option contracts" from 1993 to 1995 allowing third parties the opportunity to use recordings of Hayride shows.
Plaintiffs alleged that their rights to use the trademark have been infringed by the Warwicks' acts of registering the "Shreveport Louisiana Hayride" mark with the USPTO and using the Louisiana Hayride name in advertisements for live concerts such as the May 2002 show, thereby creating confusion in the entertainment industry and among the public regarding ownership of the trademark. The plaintiffs assert that they have the right to exclusive federal registration of the mark for entertainment products under the federal consent judgment. Plaintiffs further alleged that the Warwicks committed unfair trade practices by creating the non-profit corporation FAME to obtain state grants and charitable contributions which were used for the economic benefit of Warwicks' commercial interests.
In their first amending petition, plaintiffs basically reiterated their allegations that the Warwicks' use of the Louisiana Hayride trademark had damaged plaintiffs by diminishing the value of the mark and that Warwicks' use of FAME as an "alter-ego" to solicit funds for their private gain, in violation of LSA-R.S. 51:1901, constituted an unfair and deceptive trade practice. In the second amending petition, plaintiffs reasserted their allegation that the operations and management of the Warwicks and FAME were indistinguishable because the entities shared office space and telephone lines, such that the Warwicks improperly benefited from funds of the non-profit corporation.
Plaintiffs alleged that FAME and Warwicks published brochures and advertisements for the music show and conference stating that the proceeds would benefit FAME, but failed to disclose the relationship between the entities or to specify the amount of the proceeds that FAME would receive and that their failure to make such disclosures constituted an unfair trade practice. Plaintiffs further alleged that the use of the Louisiana Hayride trademark by FAME and Warwicks made them *745 "competitors" with respect to the plaintiffs' rights in the trademark.
Pursuant to Louisiana law, substantive property rights in a trademark arise from use of the mark, not merely from registration of the trademark with the state. In their petitions, the plaintiffs' only allegations regarding their use of the trademark involve licensing agreements or option contracts allowing others to use items related to the Louisiana Hayride shows or broadcasts, such as photographs, banners and audio or video recordings. The plaintiffs have not alleged that they placed or displayed "The Louisiana Hayride" trademark on any goods they were selling or services they were performing in this state as required to demonstrate use of the mark pursuant to LSA-R.S. 51:211(H).
Accepting as true the plaintiffs' contention that the federal consent judgment gave them the right to use the trademark with respect to "entertainment products," the allegations in their petition fail to show that they have acted to satisfy the requirement that the trademark be used in commerce. Without such use, plaintiffs have not alleged a property right in the trademark. Consequently, after considering the petition and the applicable law, we conclude the plaintiffs have failed to state a cause of action for trademark infringement against either the Warwicks or FAME.
Unfair Trade Practices
The plaintiffs argue that their petition states a cause of action under LUTPA by alleging that the Warwicks infringed on their right to use the Louisiana Hayride trademark, that the Warwicks created FAME to obtain financial contributions which were improperly used for the private economic benefit of the Warwicks, and by alleging that the Warwicks failed to comply with the provisions of LSA-R.S. 51:1901 et seq. regarding the solicitation of charitable contributions. Initially, we note that because plaintiffs have not sufficiently alleged trademark infringement, that issue cannot be the basis for a claim of unfair trade practices.
Pursuant to the statute concerning deceptive trade practices in soliciting charitable contributions, a commercial co-venturer is defined as any person who is regularly engaged in trade or commerce other than the solicitation for charities and who conducts a charitable sales promotion or advertises that a portion of revenue will be donated to a non-profit entity. LSA-R.S. 51:1901(8). In conducting a charitable sales promotion, the commercial co-venturer shall disclose the actual dollar amount or percentage per unit of goods or services purchased that will benefit the charity, if the amount has been determined. If the actual dollar amount or percentage cannot be determined prior to the start of the promotion, the co-venturer shall disclose an estimated amount or percentage in each advertisement. LSA-R.S. 51:1901.2.
It shall be unlawful for any organization claiming to sell goods or services for charitable purposes to engage in unfair or deceptive practices. LSA-R.S. 51:1905. Violation of any provision of this statute shall constitute an unfair trade practice under LUTPA. LSA-R.S. 51:1909.1.
In their petition, plaintiffs allege that the Warwicks acted as a commercial co-venturer in advertising that revenue from the May 2002 show would be donated to a non-profit entity, but failed to disclose in the advertisement for the show either the actual or estimated dollar amount or percentage of sales that would benefit FAME, a violation of Section 1901.2.
The record contains an advertisement for the May 2002 music show that *746 includes the statement, "This show is produced as a benefit to the FAME Foundation for the preservation and restoration of Shreveport's Music History." However, the advertisement does not provide any estimate of the dollar amount or percentage of sales that will benefit FAME.
This lack of disclosure appears to violate Section 1901.2 and would constitute an unfair trade practice under LUTPA, which provides that a person who suffers an ascertainable loss of money or property as a result of an unfair trade practice may bring an action for damages. However, the plaintiffs have not alleged that this lack of disclosure has caused them an ascertainable loss of money or property. Nor does their petition specify any particular instance in which FAME funds were improperly applied for the benefit of the Warwicks or explain how the plaintiffs were harmed thereby. Consequently, the plaintiffs' petition does not state a cause of action for unfair trade practices against the Warwicks or FAME. The assignment of error lacks merit.
Attorney Fees
The plaintiffs contend the district court erred in granting FAME's motion for attorney fees. Plaintiffs argue that they are not liable for attorney fees because there were sufficient grounds to support their claim under LUTPA and they acted in good faith.
Upon a finding by the court that an action filed pursuant to LUTPA was groundless and brought in bad faith or for purposes of harassment, the court may award reasonable attorney fees to the defendant. LSA-R.S. 51:1409. This provision is penal in nature and is subject to reasonably strict construction. Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153 (La.App. 2d Cir.1981). The court has discretion in determining whether to award attorney fees under the
statute. Hill Wholesale Distributing Co., Inc. v. Howat & Son, 27,936 (La.App.2d Cir.1/24/96), 666 So.2d 1252.
In his deposition, Bobby Williams testified he first became concerned that FAME's funds were used to increase the Warwicks' profits upon learning that the non-profit corporation shared office space and phone lines with the Warwicks. However, Williams stated that he did not attempt to contact anyone on FAME's board of directors about his concerns. Williams acknowledged that although plaintiffs' petition alleged that FAME had violated a state statute and that he had signed the verification of the petition, he could not specify which acts of FAME were unlawful.
Williams testified that he did not talk with any witnesses who possessed knowledge of FAME's activities and did not do any further investigation to support the allegations of the petition. He could not point to any evidence of impropriety by FAME other than the advertisements for the music shows produced by the Warwicks.
After reviewing this record, we cannot say the district court erred in finding that the plaintiffs acted in bad faith in filing this lawsuit against FAME without adequate investigation or foundation to provide a reasonable basis for the allegations in their petition. Consequently, the district court did not abuse its discretion in awarding attorney fees to FAME. Plaintiffs have not appealed the amount of the award. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the district court's judgments are affirmed. Costs of this appeal are assessed to the appellants, *747 Bobby and Ray Williams Partnership, L.L.P. and Bobby Williams individually.
AFFIRMED.