JUDE G. GRAVOIS, Judge.
I INTRODUCTION
Plaintiff/appellant, Eugene Bach, IV, appeals the trial court’s grant of summary judgment in favor of defendants, Captains Craig Andrews, William Loga, Jr., and Steven Vogt, the three appointed members of the Board of River Port Pilot Commissioners, and also the grant of exceptions of *358 prescription in favor of Captains Andrews, Loga,' and Vogt. For the following reasons, we affirm ■ the grant of summary-judgment in favor of Captains Loga and Vogt, but reverse the grant of summary judgment in favor of Captain Andrews. We further affirm the grant of the exceptions of prescription in favor of Captains Andrews, Loga,'and Vogt.

FACTS AND PROCEDURAL HISTORY

The Board of River Port Pilot Commissioners' (“the Board”) consists of three commissioned river port pilots who are appointed by the governor pursuant to Lá. R.S. 34:991(A). Pursuant to La. R.S. 34:991, et seq., and § 46:LXX.3103, et seq., of the Louisiana Administrative Code, the Board accepts applications for selection into.the River Port Pilot Apprenticeship Program (“the Program”). After | .¡reviewing the applications, the Board determines which applicants meet the criteria set forth by the Board to participate in the Program and prepares a list of apprentice candidates eligible to be selected into the Program. From time to time, the Crescent River Port Pilots Association (“the Association”), an entity entirely separate from the Board, notifies the Board that there is a' necessity for river port pilots. The Board then submits to the Association the list of eligible apprentice candidates and the Association then selects the apprentice candidates to participate, in the Program. The selected apprentice candidates then participate in the Program, which is administered by the Board, to become river port pilots upon satisfactory completion of the Program.
In 2011," Mr. Bach filed an application with the Board to become a river port pilot apprentice candidate. His application was approved by the Board and the Board included him on the list of eligible apprentice candidates. The Association thereafter selected Mr. Bach and four other apprentice candidates to participate in the Program. Mr. Bach formally entered the Program in June- of 2011. However, in November of 2011, Mr. Bach sought and was granted a temporary leave of absence from the Program because of family medical concerns. Tn . January of 2012, Mr. Bach notified the Board that he desired to end his leave of absence and return to the Program; he returned effective on February 1,2012.
In the spring of 2012, Mr, Bach was having trouble fulfilling the requirements of the Program, apparently due to ongoing family issues, which detrimentally affected his ability to perform his duties in the Program. After an exchange of correspondence and discussions between ■ Mr. Bach and the Board, the parties agreed that Mr. Bach was to- withdraw from the Program “without prejudice,” instead of having to undergo a termination for cause hearing, and would be allowed to “reapply” to the Program. ■ This agreement was memorialized |4ih, a letter-styled “Consent Agreement” dated July 18, 2012. The Consent Agreement is herein reproduced in full, to-wit:
July 18,2012
Gene Bach, IV [address]
RE: Consent Agreement
Dear Apprentice Bach:
The Board of Commissioners with your cooperation is in review of your participation in the Apprenticeship Program. After the commencement of the Program, external “family related” challenges have arisen. These challenges have redirected your priorities and have detrimentally affected your ability to comply with the program.
Based on these concerns, you and Board of River Port Pilot Commissioners have agreed that it is -in the best interest of all parties for Gene Bach, IV *359 to withdraw from the Apprenticeship Program.
The Board of River Port Pilot Commissioners acknowledges that Gene Bach’s withdrawal is without prejudice, and he will be allowed to reapply to the apprenticeship program in the future.
Mr. Bach signed the Consent Agreement on July 24, 2012; the three then commissioner-members of the Board, Captains Andrews, Loga, and Vogt, signed it on August 9, 2012.
Approximately three rnonths later, .on October 17, 2012, Mr. Bach notified the Board in writing that he sought to “resume” his apprenticeship program as per the | ¿Consent Agreement. ■ The Board responded in a letter, stating that the Consent Agreement required Mr. Bach to “reapply’ to become an apprentice candidate, rather than “resume” his participation in the Program, and opining that Mr. Bach might be in violation of the Consent Agreement by seeking to “resume” his participation in the- Program. In this same letter, the Boards told Mr. Bach that if he wished to* “resume” his participation in the Program, it would move forward with a termination for cause hearing regarding his noncompliance with the requirements of the Program which led to his withdrawal from the Program as noted in the Consent Agreement. The Board also sought to have Mr. Bach sign an “amended consent agreement,” which he refused.
Though continuing to disagree with the Board’s interpretation of the Consent Agreement (that he was required to “reapply” for participation in the Program, rather than to “resume” his participation in the Program), Mr. Bach did in fact reapply to the Board to become an apprentice candidate, and on January 25, 2013, the Board again included Mr. Bach on the list of eligible - apprentice candidates that was submitted to the Association. However, this time, the Association did not select Mr. Bach for participation .in the Program.
On March 7, 2013, Mr. Bach filed suit against the Board (“the original petition”), arguing- that the Board breached the Consent Agreement by not allowing him to “resume” his. participation- in the Program.[1] On June 11, 2013, Mr. Bach filed a first amending, restated, and supplemental petition (“the first petition”), asserting that the Consent Agreement allowed him to “temporarily withdraw” from the Program, that he remained a duly “selected” apprentice, and that he was entitled to specific performance (commanding the Board to immediately resume his “status” in the Program) and damages, including past, present and future earnings. In this petition, Mr. Bach also added the Association and “XYZ Insurance Company” as.defendants.[2] On June 2, 2014, Mr. Bach filed a second amending and supplemental petition (“the second petition”), adding Western World Insurance Group, which allegedly provided an insurance policy in favor of the Board, as a defendant. This petition also, specifically eliminated and delet *360 ed | ñany previous reference to specific performance as an alternative remedy and instead sought damages as Mr. Bach’s sole remedy “as to only the breach of contract claim herein.”
On August 25, 2014, Mr. Bach filed a motion for leave to file a third amended, restated, and supplemental petition (“the third petition”). On August 29, 2014, Mr. Bach filed a motion for partial summary judgment “on the issue of liability, and liability only, on the cause of action for breach of contract_” Therein, Mr. Bach argued that the matter could be decided in his favor by reading only the 102-word Consent Agreement, that the meanings of the words therein were clear, and that there were no genuine issues of material fact because the parties agreed that this was the agreement that bound them. In response, on September 15, 2014, the Board filed its own motion for summary judgment, arguing also that the Consent Agreement was clear on its face, and specifically seeking dismissal of all claims brought against it by Mr. Bach. The Board also filed an opposition to Mr. Bach’s motion for partial summary judgment. The motion for partial summary judgment and the motion for summary judgment, as well as the motion for leave to file the third petition, were heard on September 30, 2014 and taken under advisement. In a written judgment signed on October 14, 2014, the trial court granted Mr. Bach’s motion for leave to file the third petition. On November 21, 2014, a judgment was signed, denying Mr. Bach’s motion for partial summary judgment and granting the Board’s motion for summary judgment.
Mr. Bach thereupon filed a writ application with this Court, seeking this Court’s supervisory review of the trial court’s November 21, 2014 judgment. This Court conducted a de novo review, and on March 31, 2015, denied Mr. Bach’s writ application, agreeing with the trial court’s ruling, to-wit:
17ReIator, Eugene Bach, IV, seeks a review of the District Court’s September 30, 2014 denial of [Mr.] Bach’s Motion for Partial Summary Judgment on a breach of contract claim against the defendant, the Board of River Port Pilot Commissioners, and the court’s grant of the defendant’s motion for summary judgment on the breach of contract issue. On de novo review, we agree with the trial court’s ruling. The trial court properly applied rules of Louisiana contract interpretation to a clear and unambiguous Consent Agreement, and it did not err when it declined to consider parole [sic] evidence of the parties’ subjective intent when the agreement is clear and unambiguous within its own four corners. Accordingly, Relator’s writ application is denied.[3]
The third petition added three new defendants, Captains Loga, Vogt and Andrews in their individual capacities, and asserted a cause of action against them for punitive damages under 42 U.S.C. § 1983, arising out of their acts on behalf of the Board relative to the Consent Agreement. On March 11, 2015, Captains Loga and Vogt jointly filed an exception of prescription as to the claims made against them in the third petition. On March 12, 2015, Captain Andrews also filed an exception of prescription. On March 13, 2015, Captains Loga and Vogt filed a joint motion for summary judgment seeking dismissal of all claims against them. Mr. Bach filed oppo *361 sitions to the exceptions of prescription and the motion for summary judgment.
The Captains’ exceptions and the motion for summary judgment were heard on May 28, 2015. The trial court ruled from the bench, granting the exceptions of prescription and dismissing all claims against the individual commissioners. The trial court also granted the motion for summary judgment in favor of Captains Loga and Vogt, dismissing all claims against them. The trial court specifically made the rulings independent of each other, so that each would have effect independently of the other ruling. These rulings were memorialized in a written | ¿judgment dated June 18, 2015.[4] Mr. Bach timely filed a motion for a new trial, which was denied. This timely appeal followed.
On appeal, Mr. Bach argues the following assignments of error, to-wit:
1. The trial court erred in dismissing [Mr.] Bach’s 42 U.S.[C.] § 1983 claim, detrimental reliance claim, and Louisiana Unfair Trade Practice and Consumer Law (“LUTPA”) claim against the [Board] by summary judgment despite that “entity” not seeking summary judgment on those causes of action;
2. The trial court erred in ruling that it had previously dismissed [Mr.] Bach’s 42 U.S.[C.] § 1983 claim, detrimental reliance claim, and Louisiana Unfair Trade Practice claim against the [Board] through a prior summary judgment which solely dismissed [Mr.] Bach’s breach of contract claim against the [Board];
3. The trial court erred in dismissing all of [Mr.] Bach’s 42 U.S.[C.] § 1983 claim, detrimental reliance claim, and LUTPA claim against Captain Andrews by summary judg- . ment despite Captain Andrews not seeking summary judgment on those causes of action;
4. The trial court erred in ruling that all of [Mr.] Bach’s claims against Captains Loga, Vogt and Andrews did not relate back to the filing of the (sic) [Mr.] Bach’s first amending, restated and supplemental petition;
5. The district court erred in dismissing [Mr.] Bach’s 42 U.S.[C.] § 1983 claim, detrimental reliance claim, and LUTPA claim against Captains Loga, Vogt, and Andrews; and
6. The district court abused its discretion by not allowing attorney Peter J. Butler, Jr.’s August 17, 2012 letter to his client, the Crescent River Port Pilots Association, into the evidence during the hearing on the motion for summary judgment.

ANALYSIS

Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a 19matter of law.” La. C.C.P. art. 966(B)(2).[5] The party *362 bringing the motion bears the burden of proof; however, where 'the moving party will not bear the burden of proof at trial, the moving party-must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof .at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id,
On appeal, our review of summary judgments is de novo under the same criteria that 'govern the district court’s consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. The decision as to the propriety of a grant of a motion for sum-mafy judgment must be made with reference to the substantive law applicable to the case. Muller v. Carrier Corp., 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

FIRST AND SECOND ASSIGNMENTS OF ERROR

Dismissal of alleged § 1983, detrimental reliance, and LUTPA claims against the Board

 In its June 18, 2015 written judgment, besides granting the exceptions of prescription, and granting the motion for summary judgment in favor of Captains Andrews, Loga, and Vogt, thereby dismissing all claims against the individual commissioners, the trial court specifically ruled that because “all claims arising out of the plaintiffs Petitions having been, heretofore dismissed on summary judgment as- against The Board of River Port Pilot Commissioners,” no viable claims remained against the Board. In his first two assignments of error, Mr. Bach argues |inthat this ruling was in error, as it amounted to a dismissal of his alleged § 1983, detrimental reliance, and LUTPA claims against the Board.
In these assignments, Mr. Bach first argues that these alleged claims against the Board could not have been dismissed by the trial court’s summary judgment of June 18, 2015, because the only motion for summary judgment before the Court on that date'was the one brought by Captains Loga and Vogt; no'’motion for summary judgment filed by the Board' was before the court on that datei Mr. Bach is correct in this regard.
Mr. Bach next argues that the trial court has “misconstrued” its earlier November 21, ‘2014 grant of summary judgment, in favor of. the Board. He asserts that the alleged non-breach of contract claims (his alleged § 1983, detrimental reliance, and LUTPA claims) against the Board were not dismissed by the grant of the Board’s motion for summary judgment on November 21,2014, because that earlier summary judgment concerned only Mr. Bach’s breach of contract claim (i.e., breach of the Consent Agreement) against the Board. For. the following reasons, we find no error in the trial court’s conclusion that all claims asserted by Mr. Bach against the Board were dismissed when the trial court granted summary judgment in favor of the Board on November 21, 2014.
First, Mr. Bach’s third petition'does not allege a cause of action against the Board, but rather only asserts 42 U.S.C- § 1983 claims - against the individual Captain-defendants,
*363 Second, a thorough and careful review of Mr. Bach’s original, first, and second petitions leads this Court to the conclusion that Mr. Bach failed to assert any non-breach of contract claims against the Board in those petitions,[6] •
Inin paragraph 11 of his first petition, Mr. Bach states:
• ... Mr. Bach relied upon the Board of River Port Pilot Commissioners’ inclusion of the term “without prejudice” to his now apparent detriment and entered into the agreement with the understanding that he was entitled to immediately resume his apprenticeship upon reapplication.[7]
Mr. Bach also states, in paragraph 16 thereof:
As a result of the foregoing, Mr. Bach remains a “selected” Apprentice river port pilot by the Crescent River Port Pilots Association, after being certified by Board of River Port Pilot Commissioners as an eligible Apprentice Candidate, and is entitled to specific performance commanding the Board of River Port Pilot Commissioners to immediately resume Mr. Bach’s status in the Apprenticeship Program, damages in accordance with La. Civ.Codé Art.1967 as Mr. Bach relied to his detriment that he would be readmitted upon application to the Apprenticeship Program, as well as pay all past, present and future earnings, loss of future earning capacity, loss of future pension funds and contributions, loss of hospitalization benefits, and any general damages allowed by law.
In brief, Mr. Bach assumes that his original, first, and second petitions asserted causes of action against the Board for detrimental reliance and a LUTPA violation’under the “fact pleading” system used by our Code of Civil Procedure; however, upon review, we find that Mr. Bach failed to assert a detrimental reliance claim or a LUTPA claim against the Board in those petitions.
In Greemon v. City of Bossier City, 10-2828 (La.7/01/11), 65 So.3d 1263, 1268, the Louisiana Supreme Court explained how the. “fact pleading” system in our Code of Civil Procedure works:
Louisiana’s Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations. See Montalvo v. Sondes, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. As described in LSA-C.C.P. art. 854: “No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be -set forth in numbered | ^paragraphs.” The fact-pleading requirement replaces an earlier .“theory of the case” pleading requirement. See LSA-C.C.P. art. 862, Official Revision Comments-1960, cmt. (b). Because the “theory of the case” pleading *364 requirement has been abolished, “[s]o long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence.” Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848, 855 (La.1974), overruled on other grounds by A. Copeland Enterprises, Inc. v. Sli-dell Memorial Hosp., 94-2011, p. 9 (La.6/30/95), 657 So.2d 1292, 1299. However, even though the “theory of the case” need no longer be pled, LSA-C.C.P. art. 891 provides that a petition “shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation.” (Emphases added.)
A thorough review of the original, first, and second petitions shows that Mr. Bach failed to make a statement (short, clear, concise, or otherwise) in those petitions of any cause of action arising out of the facts, transaction or occurrence that is the subject matter of the litigation therein, which was the Consent Agreement, other than a breach of contract claim (ie., breach of the Consent Agreement). As such, we find that Mr. Bach’s arguments that the aforementioned petitions allege facts that stated a claim against the Board for detrimental reliance are without merit.
As this Court recently stated in Parker v. Taplin, 15-440 (La.App. 5 Cir. 12/23/15), 182 So.3d 1183, 1186-1187:
Under the theory of detrimental reliance, “[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.” La. C.C. art. 1967. The purpose of the doctrine of detrimental reliance is to “prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.” Suire v. Lafayette City-Parish Consol. Gov’t, 04-1459 (La.4/12/05); 907 So.2d 37, 59. To prove detrimental reliance, a party must show by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance. Id.
| isThe allegations in the first petition quoted above, though Mr. Bach used the words “relied” and “detriment,” do not state a cause of action against the Board for detrimental reliance. Nor are such facts alleged 'elsewhere in the petitions. Instead, Mr. Bach describes facts that show he disagreed with the Board’s interpretation of the specific words “without prejudice” in the Consent Agreement, which is a breach of contract claim. Mr. Bach pointed to no additional act, admission, representation, or silence of the Board that was contrary to the wording of the Consent Agreement. Accordingly, we find that a cause of action for detrimental reliance, not properly described in a petition as per La. C.C.P. art. 891, nor supported by facts required by the same article, was simply not pled, Mr. Bach’s citation to La. C.C. art.1967 notwithstanding.[8]-[9]
*365 However, it is clear that the issue of the interpretation of the words “without prejudice,” which Mr. Bach did put at issue in the above-quoted paragraphs from the first amended petition, was raised and argued in the Board’s motion for summary judgment, and the same was addressed in the trial court’s judgment with reasons signed on November 21, 2014. The trial court specifically found that the clear meaning of the term “without prejudice” was discernable within the four corners of the Consent Agreement without resort to parol evidence, and found in favor of the Board. The facts pled in Mr. Bach’s petitions also likewise fail to show that the Board made any other promise or conduct other than the Consent Agreement.
| uThe result is the same regarding Mr. Bach’s alleged LUTPA claim. The Louisiana Unfair Trade Practices and Consumer Protection Act (“LUTPA”) provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. La. R.S. 51:1405. The language of this legislation is broad and does not specify particular violations. Thus, what constitutes an unfair trade practice is to be determined on the facts of each case. Bobby & Ray Williams P’ship, L.L.P. v. Shreveport La. Hayride Co., L.L.C., 38,224 (La.App. 2 Cir. 4/21/04), 873 So.2d 739, 743-744 (quoting Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362 (La.App, 2d Cir.1988)). Under LUTPA, an unfair act is conduct which offends established public policy and which is unethical, oppressive, unscrupulous or substantially injurious to consumers or business competitors. Id.
Neither the original, first, nor second petitions describe a LUTPA claim in a concise statement to the court or plead facts that would support such a claim against the Board. The parties are not described as consumers or business competitors, nor do any of the petitions describe unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The first time a possible LUTPA claim is even mentioned in the record is in argument by counsel for Mr. Bach before the court at the hearing on May 28, 2015, on the motions for summary judgment filed by Captains Loga and Vogt and the exceptions of prescription filed by Captains Andrews, Loga, and Vogt. This does not comply with the requirements of La. C.C.P. art. 891.
This Court’s holding in Schnell v. McKenzie’s Tree Serv., Inc., 98-1269 (La. App. 5 Cir. 3/30/99), 731 So.2d 922, 924-925, is instructive. In reversing a judgment in favor of the plaintiff for breach of contract against the defendant who had removed a tree from her yard, this Court held:
11sLa. C.C.P. art. 891 requires a petition to “contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation.... ” The Louisiana Code of Civil Procedure sets forth a system of fact pleading. As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the “theory of the case” doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the *366 litigation, has been abolished. Brown v. Adolph, 96-1257 (La.App. 1 Cir. 3/27/97), 691 So.2d 1321. The defendant is not prejudiced if the petition fairly informs the defendant of the nature of the plaintiffs claims and the plaintiff acts consistently therewith. Brown v. Adolph, supra, (Emphasis added.)
In this case, the plaintiffs petition alleges only that the removal of the tree was unwarranted, or unnecessary, and was in violation of City and Parish ordinances. There are no allegations in' the petition to charge that McKenzie breached a contract or that McKenzie overcharged for the removal of the tree.
Because facts constituting claims for detrimental reliance and LÜTPA violations were not alleged in any of Mr. Baelfs petitions/ such claims were in fact not made against the Board. None of the petitions fairly informed the Board that these two causes' of actions were ‘ claimed, nor did Mr. Bach act consistently therewith, but rather failed to argue that a LUTPA claim was being made until the hearing in 2015. La. C.C.P. art. 891’s requirements are clear that the plaintiff must apprise the defendant of both the causes of action he claims and must plead facts supporting those causes of action.
Accordingly, we find that the only cause of action that was pleaded and supported by factual allegations against the Board prior to the effective filing date of the third petition was the breach of contract claim concerning the Consent Agreement. As such, we find no error in the trial court’s conclusion in its judgment of June 15, 2015 that all claims asserted by Mr. Bach against the Board | ifiwere dismissed when the trial .court granted summary judgment in favor of the Board on November 21,-2014.[10] These assignments of error are without merit.

THIRD ASSIGNMENT OF ERROR

Summary judgment rendered in favor of Captain Andrews

In his third assignment of error, Mr. Bach argues that the trial court erred in dismissing his 42 Ü.S.C. § 1983 claim, and his alleged detrimental reliance claim, and LUTPA claims against .Captain Andrews by summary judgment, despite Captain Andrews not having sought summary judgment on those causes of action.
Mr. Bach is correct that Captain Andrews did not file a motion for summary judgment seeking dismissal of the only claim Mr. Bach made against him in the third petition, the § 1983 claim, as Captains Loga and Vogt had done. Accordingly, to the extent the trial court’s written judgment óf June 18, 2015 grants summary judgment in favor of Captain Andrews on the claim asserted against him in the third petition, the § 1983 claim, that portion of the judgment is incorrect and is hereby reversed.[11]-[12]

*367
FOURTH AND FIFTH ASSIGNMENTS OF ERROR

Relation back of the third petition; prescription of claims raised therein; summary judgment dismissal of 42 U.S.C. § 1983 claims

Next, Mr. Bach argues that the trial court erred in ruling that all of his claims against Captains Loga, Vogt, and Andrews did not relate back to the filing of his first amending, restated, and supplemental petition. He argues that his third petition relates back under the rule set forth in Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983). He also argues that the trial court erred in dismissing his 42 U.S.C. § 1983 claim, his detrimental reliance claim, and his LUTPA claim against individual commissioners Loga, Vogt, and Andrews. As we have already found above, Mr. Bách failed to plead causes of action against any of the defendants for detrimental reliance or a LUTPA violation. Accordingly, this discussion is confined to an analysis of Mr. Bach’s § 1983 claim against the three individual commissioners.
A plaintiff seeking to pursue a claim under § 1983- must allege and prove that 1) the conduct complained of occurred under color of state law, and.2) the conduct deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or a law of the United States. Moresi v. State, 567 So.2d 1081, 1084 (La.1990).
Upon review, we find no error in the trial court’s judgment that granted the exceptions of prescription in favor of all three individual commissionfers. The third petition was filed on August 25, 2014.[13] According to his. petitions, the date Mr. Bach sustained his damages was either October 17, 2012, the date- of the letter he wrote to the Board seeking to “resume” his apprenticeship, or November 6, 2012, the date the Board responded to his request with a denial, „ Given that § 1983 actions are clearly tort claims,[14] in Louisiana they are subject to a prescriptive period of one year that runs from the date of the injury or when damage is sustained. See La. C.C.' art. 3492.' Accordingly, the third petition’s claims against the individual commissioners were prescribed on their face.
h«Though the allegations ‘ against the commissioners in the third petition arose out of the same occurrence and same operative facts as the previously dismissed claims 'against the Board, which were all based upon the Consent Agreement, the new claim against the individual commissioners was an entirely new and different cause of action, one under 42 U.S.C. § 1983, which-sounds in tort.
Mr. Bach argues that the third petition relates back to the first amending petition Under the four-part test enunciated in Ray v. Alexandria Mall, supra. The Board argues, however, that the situation at bar is not the substitution of a mistakenly ideñtifíéd party-defendant, but rather is the addition- of new defendants, and thus Ray does not apply.' We agree with the Board’s argument in this regard.
In Ray, 434 So.2d at 1086-1087, the Supreme Court established the following criteria for determining whether La. *368 C.C.P. art. 1153 allows an amendment which changes the identity of the party or parties sued to relate back to the date of filing of the original petition:
(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.
Ray involved the situation where the plaintiff sued the wrong entity: Ms. Ray sued the Alexandria Mall, when the correct defendant was the Alexandria Mall Company. The correct defendant clearly got notice of the plaintiffs suit within the prescriptive period. Ms. Ray amended her petition to change the name | ¶ ¡/identity) of the defendant to the correct entity after the prescriptive period had ended. She did not, however, seek to add additional defendants or new causes of action against either the original or the new defendant. For those reasons, Ray does not apply to the facts at bar. Mr. Bach’s third petition clearly adds the individual commissioners in their individual capacities and asserts an entirely new cause of action, the § 1983 claim, against them individually. The individual commissioners are not being substituted for the Board. And, the petition seeks to hold the new defendants liable in solido with the Board. Given these facts, Ray does not apply herein.
In any event, we note that for the first time in brief, Mr. Bach states a belief that the Board “may not be” an entity that can be sued under the law of the State, a position that he does not assert in his third petition. In his appellate brief, Mr. Bach argues that the basis for this belief is attorney Peter J. Butler, Jr.’s August 17, 2012 letter to his client, the Association, which, though not allowed into evidence, Mr. Bach admitted he received in an email sometime in August of 2012, more than two years prior to the filing of the third petition. Mr. Bach put forth no evidence of any kind (only statements) that the Board is not an entity who can be sued. He has not sought dismissal of the Board. We note also that the Board itself has never raised the defense that it cannot be sued.
We also note that Mr. Bach’s third petition named the commissioners in their individual capacities as new defendants, alleging that they should be held liable in solido in their individual capacities with the Board for acts they performed on behalf of the Board. The third petition does not allege any new or separate factual allegations against the individual commissioners or that they performed different acts or acts separate from those they performed on behalf of the Board. Previously, the trial court found the Board not liable to Mr. Bach under the RpConsent Agreement. Accordingly, the trial court did not err in dismissing Mr. Bach’s suit against the individual commissioners, it being axiomatic that as individuals, the commissioners are not liable in their individual capacities for the same acts they performed on behalf of the Board, acts that have already been found to present no basis for liability against the Board.
*369 Further, Mr. Bach provides no legal support for his allegations that he has a “vested right” or “property right” in his former “status” as an apprentice candidate or in his employment in the Program.[15] He has failed to identify any provision of law that supports his position, other than general references to the state and federal constitutions. He has identified no statute or administrative regulation that bestows a right to anyone the right to remain as a river port pilot apprentice once he has withdrawn from the Program. The Louisiana Administrative Code provisions applicable to river port pilots and the Program, L.A.C. § 46:LXX.3103, et seq., contain no provisions supporting the existence of this alleged right, and in fact, provide to the contrary. L.A.C. § 46:LXX.3109(D) provides that, among other reasons, should the apprentice fail to fulfill the duties of an apprentice, the Board in its discretion may terminate the apprenticeship. Though the Board did not terminate Mr. Bach from the Program, because he voluntarily withdrew therefrom, it clearly had the right to do so if he failed to fulfill his duties as an apprentice, for whatever reason. These statutes make clear that apprentices do not have a property right in their status as an apprentice, if they can be terminated at the Board’s discretion. Mr. Bach, similarly, had the right, as all apprentices do, to end his participation in the Program, as shown by documents attached to the pleadings that 121 were signed by him when he began the Program. Thus, Mr. Bach’s withdrawal from the Program on July 24, 2012 ended his status as an apprentice.[16]-[17]
*370 These assignments of error are without merit.

SIXTH ASSIGNMENT OF ERROR

Admissibility of the Butler letter

Finally, Mr. Bach argues that the district court abused its discretion by not allowing attorney Peter J, Butler, Jr.’s August 17, 2012 letter to his client, the Asso-ciátion (“the Butler letter”), into evidence. For the following reasons, we find no error in this ruling.
The Butler letter was attached to Mr. Bach’s memorandum in opposition to Captains Loga and Vogt’s motion for summary judgment. The trial court declined to accept this letter into evidence because it was not an affidavit or sworn, and was thus not competent summary judgment' evidence. Mr. Bach argues that he could authenticate the letter because he received it via an email from the Association.
Authentication of evidence is governed by La. C.E. art. 901. Authentication is a process whereby .something is shown to be what it purports to be. Price v. Roy O. Martin Lumber Co., 04-0227 (La.App. 1 Cir. 4/27/05), 915 So.2d 816, 822 |22(citing Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935 (La.App. 1 Cir. 2/14/97), 691 So.2d 208, 211). Evidence must either be authenticated as provided' in La. C.E. art, 901, or it must be self-authenticating. Id. La. C.E. art. 901(B) includes a non-exclusive list of methods that may be utilized to authenticate evidence, including testimony of a witness with knowledge that the matter is what it is claimed to be. Upon review, under the particular facts of this case, we find that Mr. Bach is not the proper witness to authenticate the letter, particularly because he did not write it. Accordingly, the trial court did not err in refusing to admit the Butler letter into evidence on this ground.
In any event, we find that the Butler letter does not raise a genuine issue of material fact regarding the motion for summary judgment filed by Captains' Loga and Vogt. Mr. Butler’s letter was his personal legal opinion regarding the Association’s Bylaws and Mr. Bach’s alleged status thereunder; it was not a judgment or a legally binding determination of the rights of anyone or any entity. Accordingly, we find no abuse of discretion in the trial court’s ruling that excluded the Butler letter from evidence at the hearing in question.[18]

CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment in favor of Captains Loga and Vogt; we reverse the grant of summary judgment in | Mfavor of Captain Andrews. We further affirm the grant of the exceptions of prescription in *371 favor of Commissioners Loga, Vogt, and Andrews.

AFFIRMED IN PART; REVERSED IN PART

. In response to the suit, the Board fifed art exception of no cause of action, which the trial court granted, dismissing the Board from the suit. Mr. Bach then fifed a motion for a new trial, which was granted and which reversed the Board’s prior dismissal from the suit.
It is noted that the Board did, in fact, state that Mr. Bach could "resume” his apprenticeship but face a termination for cause hearing for his failure to comply with the rules and 'duties of the apprenticeship program.’ It is apparent that Mr, Bach desired to "resume” his apprenticeship with no consequences for his earlier alleged violations of the program.

. Mr. Bach later moved to dismiss the Association as a defendant, which motion was granted on October 30, 2013.

. Bach v. The Board of River Port Pilot Commissioners, 15-51 (La.App. 5 Cir. 3/31/15) (unpublished writ decision).

. The trial court’s June 18, 2015 written judgment grants summary judgment in favor of Captains Loga, Vogt, and Andrews. In his third assignment of error, Mr. Bach argues that the trial court erred in granting summary judgment in favor of Captain Andrews, since Captain Andrews did not file a motion for summary judgment. As per Mr. Bach’s third assignment of error, discussed infra, we agree with Mr. Bach’s argument that the trial court erred in its written judgment granting summary judgment in favor of Caption Andrews.

. The summary judgment hearing in this case was held on May 28, 2015. Accordingly, we *362 apply the version of La. C.C.P, art. 966 in effect at that time.

. Upon review of Mr. Bach’s motion for partial summary judgment filed against the Board on August 25, 2014, as well as the memorandum in support thereof, it is clear that his use of the term "partial” refers to the fact that he sought a determination of only the liability portion of his case; rather than liability and damages. , His motion does not clearly state that he had asserted any causes of action other than breach of contract.

. However, Mr. Bach’s July 23, 2012 letter to the Commissioners, attached to the Board’s opposition to Mr. Bach’s motion for partial summary judgment, seems to indicate that this assertion is false. Therein, he asks the Commissioners to change their minds regarding the terms of the Consent Agreement, which had already been sent to him, showing unequivocally that he understood that the terms of the Consent Agreement meant that by withdrawing' without prejudice from the apprenticeship program, he would have to "start over” when and if he reapplied.

. We also note that detrimental reliance usually comes into play when no written contract exists or the contract is found to be unenforceable. Jackson v. Lore, 34, 124 (La.App. 2 Cir. 11/01/00), 779 So.2d 808, 814. Clearly, in this case, the Consent Agreement is an existing, enforceable contract.

. Mr. Bach also argues in brief that the trial court’s finding that a claim for detrimental reliance may only be made in the absence of other claims was incorrect, the trial court apparently confusing the detrimental reliance claim with one for unjust enrichment. While it does appear that the trial court's dicta state *365 ment to that effect is in fact incorrect, such mistake does not create an appealable issue, as the ruling’s result is correct. As Mr. Bach failed to properly assert facts that would support a claim for detrimental reliance, our finding that such claim was not properly asserted also results in the denial of relief to Mr. Bach on this claim.

. The trial court stated, at the May 28, 2015 hearing, that'it had meant, in its November 21, 2014 judgment, to dismiss all claims against the Board, which it did.

. This reversal is inconsequential, however, as we find no error in the trial court’s judgment that granted the individual commissioners’ exceptions of prescription of Mr. Bach’s § 1983; claims made against the individual ■ commissioners, as discussed infra.

.This Court has already found above that none of Mr. Bach's petitions pleaded facts alleging a detrimental reliance claim or a LUTPA claim against any defendant. To the extent that-the third petition sought to hold Captain Andrews liable 'in solido with the Board for such claims or the breach of contract claim that was asserted, the breach of contract claim was decided in the Board’s favor in the November 21, 2014 trial court judgment, which this Court upheld in its ruling in writ application No. 15-51 on March *367 31, 2015, as noted abové. Therefore, Captain Andrews cannot be liable in solido with the Board on a claim for which the Board has already been exonerated.

. As noted above, Mr. Bach filed a motion for leave to file the third petition on August 25, 2014. The motion wáS granted on October 14,-2014;

.. See City of Monterey v. Del Monte Dunes, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

. Mr. Bach sought to introduce Mr. Butler’s letter in support of his claims; however, the trial court denied its admission into evidence, as discussed infra in Mr. Bach’s sixth assignment of error.

. Mr. Bach cites Driscoll v. Stucker, 04-0589 (La. 1/19/05), 893 So.2d 32, in support of his position on this issue. However, we find that Driscoll is distinguishable on the facts and provides no support to Mr. Bach on this issue. In Driscoll, the plaintiff, a medical resident, had satisfactorily completed the requirements of his residency and had secured the required letter of recommendation in order to sit for the Board examinations. When the letter of recommendation was rescinded with the result that he was denied the right to sit for the Board examinations, Dr. Driscoll sued. In ruling in Dr. Driscoll’s favor, the court found that he had obtained a properly interest in receiving the recommendation upon the completion of the residency program, and further that federal case law recognized that medical residents may possess property interests in their positions. Mr. Bach, however, voluntarily resigned from the Program without completing the requirements of the Program.

. Mr. Bach also argues that the Board violated his property right in his status as an apprentice that was extended to him by the Association, the entity that selected him to become an apprentice, and that the Board had no right to take away his status of apprentice as conferred to him by the Association. It is noteworthy that the Association has not joined in this suit to support Mr. Bach’s position or charge the Board with interfering with the Association’s authority in this regard.
The Association did, however, intervene in this suit to assert the attorney-client privilege concerning the Butler letter. After the Association was dismissed as a defendant, in October of 2014 it intervened in this suit to assert that the Butler letter of August 2012 was clearly privileged under the attorney-client privilege, that it had been disseminated by mistake, that the mistaken dissemination in no way waived its privilege, and that Mr. Bach had repeatedly violated his affirmative duty to safeguard and return the mistakenly-received Butler letter. The Association sought a ruling sealing the portions of the record with the privileged communication and a protective order as well. It does not appear from the appellate record that the intervention was ruled upon, nor is such raised on appeal. The admissibility of the Butler letter is the issue involved in Mr. Bach's sixth assignment of error, discussed infra.

. We. also note that the Butler letter was also excluded from evidence when the trial court considered Mr. Bach’s motion for partial summary judgment and the Board’s motion for summary judgment. Mr, Butler was counsel to the Association, which was not a party to the Consent Agreement, and his letter to his client was not written until August 12, 2012, after the Consent Agreement was finalized, Mr. Butler’s letter reflected that his client had asked him for a legal opinion regarding certain provisions (or the lack thereof) in the Association’s Bylaws regarding the status of apprentices .after withdrawal from the program. Given the facts that the Association was not a party to the Consent Agreement, nor was Mr. Butler's opinion written of the Bylaws until after the confection of the Consent Agreement, nor was it shown that the Bylaws governed the formation of the Consent Agreement, this letter was properly excluded from evidence because it was of no evidentiary value in determining the intent of the parties to the Consent Agreement or whether such was breached.