LILJEBERG, J.
Relators/Defendants, Robert Allan Nelson and Jerome Garfield Smith, III, as co-trustees of the Allan R. & Louise S. Nelson Revocable Trust and The Allan R. Nelson Marital Trust ("Trustees") filed an application for supervisory writs seeking reversal of the trial court's denial of their motion for summary judgment. After reviewing the writ application, this Court allowed the parties the opportunity to present oral argument and to submit additional *468 briefing to this Court in accordance with La. C.C.P. art. 966(H).[1] For the following reasons, we reverse the trial court's judgment denying the summary judgment motion, grant the Trustees' motion and dismiss all claims alleged against the Trustees by respondents/plaintiffs, Nancy Williams and Franco Valobra, with prejudice.
FACTUAL AND PROCEDURAL BACKGROUND
This matter involves plaintiffs' purchase of a residence located at 415 Vincent Avenue in Metairie, Louisiana from the Trustees for $1,400,000.00 (the "Property"). When they initially listed the Property for sale in February 2012, the Trustees each executed a document entitled "Property Disclosure Document for Residential Real Estate" ("Property Disclosure") attesting to the condition of the Property. The form required them to indicate "yes," "no" or "no knowledge" for each question regarding whether defects existed in specific parts of the Property listed on the form. The Trustees checked the "no" boxes for most inquiries relating to existing defects. They answered "yes" to Questions 5 and 12 regarding whether the property experienced flooding, water intrusion, accumulation or drainage problems. The Trustees disclosed that the Property experienced flooding during Hurricane Katrina and also during the May 8, 1995 flood due to a blocked drain. They answered "yes" in response to Questions 7, 8 and 9 regarding termite damage and disclosed that the Property previously experienced termite damage, which was repaired. The Trustees attested that the statements and explanations provided were true and correct to the best of their knowledge.
On February 27, 2012, plaintiffs signed an Agreement to Buy offering to purchase the Property, subject to inspections. The Agreement to Buy warned of the consequences of the failure to obtain inspections and notify the sellers of deficiencies and desired remedies:
FAILURE TO MAKE INSPECTIONS OR TO GIVE WRITTEN NOTICE OF DEFICIENCIES AND DESIRED REMEDIES TO SELLER (OR SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 141 THROUGH 155 WITHIN THE INSPECTION PERIOD SHALL BE DEEMED AS ACCEPTANCE BY BUYER OF THE PROPERTY'S CURRENT CONDITION.
Plaintiffs also signed an addendum to the Agreement to Buy explaining the Property would be sold without any warranties and acknowledging that they did not rely on any statements or representations made by the Trustees:
It is expressly agreed that immovable property herein conveyed and all improvements and compound parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in-appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "As Is, Where Is," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, suitability of such properties for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of *469 the purchase price by reason of any such defects.
Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion deems sufficiently diligent for the protection of Purchaser's interests.
Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.
After the parties reached an agreement on the purchase price, plaintiffs obtained a home inspection, a swimming pool inspection and a termite inspection. On March 9, 2012, plaintiffs submitted a "Property Inspection Response," which included written reports regarding the home, swimming pool and termite inspections. The reports noted the following issues with the Property:
1) Air Conditioning System: The report noted organic growth at vents and pan holding water "which may indicate an AC problem." The inspector recommended an evaluation by a qualified licensed contractor.
2) Roof: The report noted a damaged or missing shingle and staining in the attic and stains/damage on the front wall in the rear addition. The report noted the inspector was unable to access the front roof and was unable to determine if active leaks existed. The inspector suggested that the plaintiffs inquire with the seller about "the history of leaks" and recommended evaluation by a qualified licensed contractor.
3) Moisture: The report noted moisture stains/damage at the right rear french door and door trim and a courtyard french door trim. The inspector recommended an evaluation by a qualified licensed contractor. The report also noted moisture stains/damage at the right side of the laundry and noted with respect to the patio, "surface raised/settled."
4) Termites: The report noted unusual spots in the upstairs hall linen closet and further stated they were unable to determine if they were caused by wood destroying insects.
5) Pool: The report noted the pool was cloudy and had signs of aging. It also noted certain equipment needed to be repaired or replaced.
6) Second Floor: The report noted that a door was difficult to close and that may be indicative of structural movement. The report also noted significant cracking at the moldings in the rear addition and front left bedroom.
The home inspection report also stated that the subsurface drains were not tested and were not part of the home inspection report. In the Property Inspection Response, plaintiffs noted a defect with the exterior foundation and requested that the Trustees repair and correct moisture damage, including moisture-damaged doors. Plaintiffs requested that the Trustees make recommended repairs to the roofing *470 and flashing system. Plaintiffs also made requests that the Trustees service and repair the air conditioning system and make recommended repairs for electrical, kitchen, appliance, laundry and pool issues. The parties engaged in further negotiations and the Trustees agreed that, in lieu of any other repairs, the Trustees would repair a leaking gas line in the pool area and replace missing roof shingles. They also agreed to include a dining room chandelier in the sale and to pay $5,000 of plaintiffs' closing costs.
On April 25, 2012, the Trustees conveyed the Property to plaintiffs by a Cash Sale of Property with a waiver of redhibition provision:
Without limiting the generality of the foregoing, the property is being sold "AS-IS, WHERE-IS," without any warranties or representations whatsoever, express or implied, including, without limitation, any warranty or representation with respect to the condition of the property of any of its components, parts or contents or with respect to fitness or suitability of the property or any of its components, parts or contents for Purchasers' intended use or any other particular use, purpose or condition. Purchasers' specifically waive all claims and all causes or rights of action which Purchasers have or may have against Vendors with respect to the property including any and all claims that it may have to rescind or resolve the sale effected thereby or to demand a reduction, set off or diminution of the purchase price or any part thereof based upon the existence of any redhibitory or other vices or defects. Purchasers further waive any claims that Purchasers have or may have in "quanti minoris" or for reduction of the purchase price paid therein, or any other rights provided in Louisiana Civil Code Articles 2520 through 2548, inclusive.
* * * *
This property is being sold in "as is" condition with waiver of redhibition in accordance with Louisiana Civil Code Articles 2520, et seq.[2]
Plaintiffs allege that after the sale, they began renovations to the Property and discovered it contained numerous hidden defects. Plaintiffs' counsel allegedly sent correspondence to the Trustees outlining the alleged defects and asking the Trustees to pay to repair the defects. On September 4, 2012, the Trustees' counsel responded by noting that plaintiffs acknowledged in their letter that they only discovered the alleged defects after they began renovations and were not able to detect the alleged defects through inspections. Defense counsel stated that Ms. Louise Nelson, who previously resided in the Property, was not in a position to know of the alleged defects in the attic and roof, and further stated the Trustees had no knowledge of alleged defects that were not listed on the Property Disclosure.
On October 12, 2012, plaintiffs filed a petition for damages against the Trustees. Plaintiffs claimed that based on the statements in defense counsel's September 4, 2012 correspondence, the Trustees defrauded them by providing inaccurate disclosures on the Property Disclosure. Specifically, plaintiffs alleged the Trustees committed fraud by checking the "no" box rather than the "no knowledge" box on the Property Disclosure when responding as to whether certain features of the Property contained defects. Plaintiffs contend *471 these responses were fraudulent because the Trustees admitted in the September 4, 2012 correspondence that they possessed no knowledge as to whether the property contained defects. Plaintiffs alleged that if the Trustees disclosed they did not have knowledge regarding the condition of the Property, they would have obtained more comprehensive inspections. Plaintiffs further alleged the Trustees provided these false disclosures to induce them into signing a waiver of redhibition and that based on their bad faith and fraud the waiver of redhibition should be void.
On December 10, 2012, the Trustees filed an exception of no cause of action in response to the petition. In the exception, the Trustees argued that plaintiffs failed to state a redhibition claim because they did not allege the Trustees knew of the alleged defects and failed to disclose them to plaintiffs. The trial court granted the exception of no cause of action on March 20, 2013, and plaintiffs appealed the dismissal of their claims.
This Court affirmed the trial court's decision to grant the exception of no cause of action in Williams v. Smith , 13-448 (La. App. 5 Cir. 12/19/13), 131 So.3d 973. Plaintiffs sought further review from the Louisiana Supreme Court, which granted the writ application and reversed the trial court's ruling which granted the exception of no cause of action. Williams v. Smith , 14-164 (La. 4/11/14), 136 So.3d 793. In its decision, the Supreme Court found plaintiffs stated a claim to challenge the validity of the redhibition waiver:
We do not believe that a seller can represent a thing to have no defects in order to procure a waiver of redhibition and then claim that they were not in a position to know whether there were defects or not, as alleged by the plaintiffs, while using the waiver of redhibition to require the buyer to prove actual knowledge of the defect by the seller rather than merely that the thing sold contained a defect which rendered it useless (regardless of the seller's knowledge of same). Sellers cannot avoid their representation of no defects by claiming 'we really didn't know.'
Plaintiffs have specifically alleged that the waiver of redhibition was obtained by fraud, thus it cannot be presumed 'otherwise effective.' Plaintiffs have stated a cause of action to challenge the validity of the waiver and are entitled to litigate this threshold issue, which will determine the proof required of them on their redhibition claim.
Id. at 795.
After conducting discovery, on December 15, 2016, the Trustees filed a motion for summary judgment seeking dismissal of plaintiffs' claims against them on the following grounds:
1) The property disclosure form was completed honestly and truthfully and Plaintiffs have not established any evidence to support their fraud allegation.
2) After obtaining a full inspection of the property and asserting many of the same defects asserted in this case, Plaintiffs reached an agreement with the Trustees to accept certain repairs, $5,000 and a chandelier "in lieu of any other repairs."
3) Based on their inspection reports, Plaintiffs knew or should have known of the alleged defects such that they cannot be considered redhibitory.
4) Plaintiffs cannot establish that they relied upon the disclosure document - a necessary element of their fraud claim.
In their opposition memorandum, plaintiffs argued that summary judgment is not appropriate in fraud cases and that the letter from the Trustees' counsel established fraud on the part of the Trustees.
*472 Plaintiffs also raised new factual allegations and claimed for the first time that the waiver of redhibition should be voided because the Trustees knew of alleged defects in the Property and failed to disclose them to plaintiffs.
The Trustees filed a reply memorandum arguing that plaintiffs failed to provide evidence of fraud and further noted that plaintiffs cannot amend their petition to raise new factual allegations and claims in their opposition memorandum. The Trustees also raised objections based on hearsay, relevance and vagueness, to most of the evidence plaintiffs relied on in support of their opposition. The trial court denied the Trustees' motion for summary judgment without ruling on the evidentiary objections. The Trustees filed an application for supervisory writs with this Court and on May 31, 2017, this Court granted the writ, reversed the trial court's ruling and remanded the matter for the trial court to rule on the Trustees' evidentiary objections in accordance with the requirements of La. C.C.P. art. 966(D)(2). Williams v. Nelson , 17-156 (La. App. 5 Cir. 5/31/17) (unpublished writ disposition).
On remand, the trial court entered a judgment on March 25, 2018, which sustained the majority of the objections raised by the Trustees regarding the evidence presented by plaintiffs based on hearsay grounds. The trial court excluded certain statements contained in Ms. Valobra's answer to Interrogatory No. 17 regarding alleged defects in the Property pointed out by unidentified individuals who worked on the house. The trial court also excluded a similar statement contained in paragraph 13 of Mr. Valobra's affidavit. Finally, the trial court excluded an unauthenticated report prepared by Gurtler Bros. Consultants, Inc., which plaintiffs alleged set forth the alleged hidden defects requiring repair. The trial court denied the Trustees' request to exclude the entirety of Ms. Valobra's response to Interrogatory No. 17 based on relevance and vagueness grounds. The trial court then denied the Trustees' motion for summary judgment for a second time.
DISCUSSION
In their writ application, the Trustees argue the trial court erred by denying their motion for summary judgment because plaintiffs failed to submit evidence to establish the Trustees committed fraud when completing the Property Disclosure and cannot satisfy their burden to prove they relied on the Property Disclosure. They also argue that plaintiffs' attempts to avoid their waiver of warranty is barred by their inspections, demand for repairs and agreement to accept consideration in lieu of repairs.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Bell v. Parry , 10-369 (La. App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
Under La. C.C.P. art. 966(D)(1), the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The nonmoving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Babino v. Jefferson Transit , 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.
*473 Appellate courts review a judgment granting or denying a motion for summary judgment de novo . Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Breaux v. Fresh Start Properties, L.L.C. , 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852.
We first review the Trustees' argument that plaintiffs cannot establish the Trustees engaged in fraud in completing the Property Disclosure, which would allow plaintiffs to avoid their waiver of redhibition. As explained above, plaintiffs alleged in their petition that the Trustees committed fraud due to their failure to check the "no knowledge" box on the disclosure form and their resulting failure to disclose that they were not in a position to know whether the property contained any defects. Plaintiffs claimed that if they knew the Trustees had no knowledge regarding the condition of the Property, they would have obtained more comprehensive inspections.
La. C.C. art. 2548 provides that a "buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have." A waiver of the warranty against redhibitory defects is effective under La. C.C. art. 2548 unless the seller commits fraud upon the buyer. Shelton v. Standard/700 Associates , 01-587 (La. 10/16/01), 798 So.2d 60, 64. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953. Fraud is not actionable "when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La. C.C. art. 1954. The circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856.
In Shelton, supra , the Louisiana Supreme Court discussed the requirements needed to prove fraud to avoid a waiver of the warranty against redhibitory detects as follows. In sum, there are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract. Id. at 64.
The Residential Property Disclosure Act, La. R.S. 9:3196, et. seq. ("RPDA"), sets forth the requirements for completing a "property disclosure document." La. R.S. 9:3196(2) defines a "property disclosure document" as a form "which discloses, at a minimum, known defects in the residential real property."[3]
In completing the form, La. R.S. 9:3198(B)(1) provides:
[t]he seller shall complete the property disclosure document in good faith to the *474 best of the seller's belief and knowledge as of the date the disclosure is completed and signed by the seller. If the seller has no knowledge or information required by the disclosure document, the seller shall so indicate on the disclosure statement and shall be in compliance with this Chapter.
See also Stutts v. Melton , 13-557 (La. 10/15/13), 130 So.3d 808, 812-13.
La. R.S. 9:3198(D)(1) explains that the property disclosure document does not serve as a warranty by the seller and cannot be used by the purchaser as a substitution for inspection or warranties:
(1) A property disclosure document shall not be considered as a warranty by the seller. The information contained within the property disclosure document is for disclosure purposes only and is not intended to be a part of any contract between the purchaser and seller.
(2) The property disclosure document may not be used as a substitute for any inspections or warranties that the purchaser or seller may obtain. Nothing in this Chapter precludes the rights or duties of a purchaser to inspect the physical condition of the property.
Finally, La. R.S. 9:3198(E) provides, in pertinent part, that a seller is not held liable for disclosures provided in a property disclosure document unless he engages in "willful misrepresentations:"
A seller shall not be liable for any error, inaccuracy, or omission of any information required to be delivered to the purchaser in a property disclosure document if either of the following conditions exists:
(1) The error, inaccuracy, or omission was not a willful misrepresentation according to the best of the seller's information, knowledge, and belief.
Therefore, the RPDA requires the seller to disclose "known defects" to the best of his or her information, knowledge and belief.
As explained above, plaintiffs allege in their petition that the Trustees engaged in fraud because they marked that no defects existed in certain areas of the Property and then admitted in correspondence sent by their attorney that they "were never in a position to know of any defects that may have existed in the premises." In their writ application, plaintiffs argue that by checking the "no" box, the Trustees indicated "their specific knowledge that there were no defects in the residence." They further contend that if the Trustees "truthfully advised the Valobras that they really did not know one way or the other whether the home contained hidden defects, then the Valobras would have obtained a more comprehensive home inspection then [sic] the one obtained."
Plaintiffs' arguments fail to recognize that the Property Disclosure required by the RPDA does not provide a guaranty that no defects exist in the property, but rather requires disclosures of known defects to the best of the seller's information, knowledge or belief. La. R.S. 9:3198(D) specifically states a property disclosure document is not a warranty and is not part of any contract between the buyer and seller. In addition, buyers, such as plaintiffs, cannot rely on the property disclosure document as a substitution for inspections. Therefore, plaintiffs cannot use their alleged reliance on the Property Disclosure as an excuse for failing to obtain a comprehensive home inspection or failing to follow the advice of the inspectors to obtain more extensive inspections.
We further find that plaintiffs failed to present evidence to establish the Trustees engaged in fraud by checking the "no" box on the Property Disclosure. In support of *475 their summary judgment motion seeking dismissal of this claim, the Trustees, Robert Allen Nelson and James Garfield Smith II, each provided affidavits addressing the disclosures provided in the Property Disclosure at issue. The Trustees explain that their parents, Louise and Allan Nelson, resided in the Property until Allan passed away in May 2006. Louise continued to reside in the Property until plaintiffs' purchase in April 2012. Both Trustees explained they were very familiar with the condition of the Property and each signed the Property Disclosure honestly and truthfully and to the best of his knowledge. In his affidavit, Robert Allan Nelson explained the basis for his disclosures as follows:
Nelson was very familiar with the Property and its condition where his father lived until his death in 2006 and where his stepmother lived until 2012 when the Property was sold to Plaintiffs. Nelson was involved in assisting his parents in the extensive repairs after Hurricane Katrina. Nelson obtained the assistance of his stepmom in completing the Disclosure Form. Nelson signed the Disclosure Form honestly and truthfully and to the best of his knowledge. To the best of his knowledge, none of the features of the Property for which the "no" box was checked had any defects. Mr. Nelson did not check "no knowledge" because he did in fact have knowledge of these features of the Property. To check "no knowledge" when in fact he had knowledge would not be truthful.
Jerome Garfield Smith similarly stated:
Smith was very familiar with the Property and its condition where his mother lived until 2012 when the Property was sold to Plaintiffs. Smith's mom assisted him in completing the Disclosure Form. Smith signed the Disclosure Form honestly and truthfully and to the best of his knowledge. To the best of his knowledge, none of the features of the Property for which the "no" box was checked had any defects. Smith did not check "no knowledge" because he did in fact have knowledge of these features of the Property. To check "no knowledge" when in fact he had knowledge would not be truthful.
In their opposition to the summary judgment motion and writ application, plaintiffs argue that defense counsel's September 4, 2012 correspondence constituted a statement against interest that the Trustees should have checked the "no knowledge" box on the disclosure form and provides evidence of fraud. Specifically, plaintiffs point to the phrase in the letter stating the Trustees "had no knowledge of any alleged defects that were not disclosed on the property disclosure form."
In their reply memorandum, the Trustees explain that plaintiffs mischaracterize the quoted language from the correspondence by placing it out of context. They note that the letter does not state the Trustees were not in a position to know whether or not the premises had defects. Rather, the letter states the Trustees did not know about the alleged hidden defects which plaintiffs outlined in their correspondence and allegedly uncovered after they began renovations on the Property.
After reviewing the entirety of the September 4, 2012 correspondence, we find it does not create a genuine issue of material fact regarding the issue of whether the Trustees engaged in fraud by checking the "no" box instead of the "no knowledge" box. The entire paragraph of defense counsel's letter provides as follows:
Further, your letter acknowledges that the alleged defects were not revealed until your clients began their renovation and were not detected by the inspector.
*476 Thus, the Trust does not understand your contention that the Trusts should have disclosed the alleged defects in the property disclosure form. As you may know, Ms. Louise Nelson, a widow, was living at the Property prior to this sale and she was in no position to know of the alleged defects which you claim existed (most of which were in the attic and roof). Certainly the Trusts had no knowledge of any alleged defects that were not disclosed on the property disclosure form.
Clearly, the letter does not state the Trustees had no knowledge regarding the condition of the property, but rather they had no knowledge of the defects plaintiffs claimed to uncover during their renovation project. Accordingly, after conducting a de novo review of the evidence presented by the parties, we find the trial court erred by failing to dismiss plaintiffs' fraud claim alleged in their petition for damages.
As noted above, plaintiffs also attempted to amend their petition in their opposition memorandum to change course from their allegations that the Trustees had no knowledge regarding the condition of the Property to assert new factual allegations that the Trustees knew or should have known of the alleged defects and, therefore, summary judgment was not appropriate. Because the trial court sustained the majority of the Trustees' objections to the documents plaintiffs attached to their opposition memorandum, the only evidence plaintiffs introduced in support of their allegations that defects existed in the Property and that plaintiffs knew or should have known of the defects are the following answers plaintiffs provided in response to an interrogatory request:
(1) Whenever it rained moderately, there was standing water around the house which would seep into the house.
* * *
(4) After the sale, plaintiffs found several doors that were stored in the rear of the property which had been changed out since Hurricane Katrina due to water damage.
(5) When the carpet was removed, plaintiff observed that caulking was in place to attempt to cosmetically repair water intrusion problems.
The Trustees argue that plaintiffs cannot allege wholly new factual allegations and legal grounds for recovery in a memorandum in opposition to a summary judgment motion. The Trustees further argue that these allegations are vague as to the timing, location and extent of alleged damages and insufficient to establish the Trustees knew of alleged defects in the Property.[4] They also note that all of these issues relate to the alleged defect in the exterior foundation and alleged moisture intrusion problems, which plaintiffs requested the Trustees repair and then accepted a cash payment and chandelier in lieu of the repairs.[5]
We agree with the Trustees' objection that plaintiffs cannot allege facts to support a new fraud claim in a memorandum in opposition to a motion for summary judgment. A memorandum is not recognized as a pleading. See La. C.C.P. arts. 852, 856, and 891 ; see Vallo v. Gayle Oil Co. , 94-1238 (La. 11/30/94), 646 So.2d 859, 865 ; see also *477 Bach v. Bd. of River Port Pilot Comm'rs , 15-764 (La. App. 5 Cir. 5/12/16), 193 So.3d 355, 363-64 (finding that the plaintiff failed to allege factual allegations in his original or amending petitions to support claims raised for the first time in arguments opposing a summary judgment motion.)
In addition, this case is over six years old. Plaintiffs were provided with more than ample opportunity to present admissible evidence to establish genuine issues of material fact exist with respect to their fraud claims against the Trustees. Accordingly, to the extent the trial court denied the summary judgment motion based on facts regarding the Trustees' knowledge of redhibitory defects alleged for the first time in plaintiffs' opposition memorandum, we find it was improper for the trial court to consider these facts. Having found the trial court erred in denying the summary judgment motion, we pretermit a discussion of the Trustees' remaining assignments of error.
CONCLUSION
Based on the foregoing, we reverse the trial court's denial of the Trustees' motion for summary judgment, grant the Trustees' motion and dismiss all of plaintiffs' claims against the Trustees, with prejudice.
REVERSED; SUMMARY JUDGMENT GRANTED AND PLAINTIFFS' CLAIMS DISMISSED WITH PREJUDICE

La. C.C.P. art. 966(H) provides:
On review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or party without assigning the case for briefing and permitting the parties an opportunity to request oral argument.

In addition to signing the act of sale, the parties also separately signed beneath the language containing the waiver language.

In 2012, when the Trustees executed the Property Disclosure, La. R.S. 9:3196(1) provided that:
"Known defect" means a condition found within the property that was actually known by the seller and that results in any of the following:
(a) Has a substantial adverse effect on the value of the property.
(b) Significantly impairs the health or safety of future occupants of the property.
(c) If not repaired, removed, or replaced, significantly shortens the expected normal life of the premises.

Pursuant to La. C.C. art. 2548, a buyer is not bound by an exclusion or limitation of a warranty when the seller has declared that the thing has a quality that he knew it did not have. Schmuck v. Menees, 13-557 (La. App. 5 Cir. 12/12/13), 131 So.3d 277, 281.

A seller owes no warranty for defects that were known to the buyer at the time of the sale or that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521.