WINDHORST, J.
| Appellant, Marion Bertaut, appeals from the trial court’s judgment granting appellees’, Corral Gulfsouth, Inc. and James River Insurance Co.’s (“Corral”), motion for summary judgment. For the reasons that follow, we affirm.
On September 24, 2013, Mrs. Bertaut was a guest patron at the Golden Corral restaurant located at 3920 Williams Blvd. in Kenner. While walking to her table with her food, Mrs. Bertaut fell. Mrs. Bertaut filed a petition for damages against Corral on November 27, 2013, contending that she slipped in a “puddle of water,” and as a result she sustained injuries.
Corral answered Mrs. Bertaut’s petition on January 27, 2014. On September 21, 2015, Corral filed its motion for summary judgment arguing Mrs. Bertaut could not prove that the condition complained of presented an unreasonable risk of harm. Corral contended that under La. R.S. 9:2800.6, wet or slick floors marked by warning signage did not constitute an unreasonably dangerous condition. Corral argued that a two to three foot tall bright yellow warning cone was placed in the area prior to Mrs. *355 Bertaut’s fall. Corral argued the surveillance video clearly showed that Mrs. Ber-taut passed close by the warning cone and over the exact location of the eventual fall multiple times prior to the fall. Thus, the warning cone was immediately apparent and obvious to any person entering the area, and to any person passing the area multiple times, including Mrs. Bertaut in this case.[1]
Mrs. Bertaut filed an opposition arguing there were genuine issues of material fact. She contended that Corral’s argument was circular relative to the defect in the premises, claiming on the one hand that Corral had put out a cone to warn of the condition, which it argued made the condition open and obvious, but Corral never admitted that there was a dangerous condition that required any 12warnings. Mrs. Bertaut argued that genuine issues of fact remained concerning whether the condition was open and obvious, whether Corral had a duty to warn of the condition, whether Corral assumed a duty to warn about the condition by placing a single cone in the area of the hazard, and whether Corral properly discharged its duty to warn Mrs. Bertaut of the dangerous condition.[2]
On November 5, 2015, the trial court granted Corral’s motion for summary judgment with reasons, and dismissed plaintiffs claims with prejudice. This appeal followed.
Discussion
In this appeal Mrs. Bertaut contends the trial court erred in granting Corral’s motion for summary judgment. She argues the trial court erred as a matter of law by applying the doctrine of open and obvious to Corral’s placement of a warning cone, instead of to the allegedly hazardous condition itself, ie., the puddle of water. She also contends Corral failed to prove an absence of genuine issues of material fact as to whether the condition that caused her to fall and sustain an injury was open and obvious. She further contends Corral failed to exercise reasonable care in the placement of the warning cone.
Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 06-363 (La. 11/29/06), 950 So.2d 544, 547; Rayfield v. Millet Motel, 15-496 (La.App. 5 Cir. 1/27/16), 185 So.3d 183, 185; Bailey v. Exxon Mobil Corp., 15-225 (La.App. 5 Cir. 12/23/15), 184 So.3d 191, 198. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with |athe affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. Art. 966B(2). The party moving for summary judgment bears the burden of proof. However, if the movant will not bear the burden of proof at trial, the movant’s burden on a motion for summary judgment does not require him to negate all essential elements of the *356 adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. Art. 966C(2).
La. R.S. 9:2800.6 provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death,,, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all othr er elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercisé reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
Therefore, in a slip and fall case against a merchant, a plaintiff must prove the essential elements of a standard negligence claim in addition to the requirements under La. R.S. 9:2800.6. Burns v. Sedgwick Claims Mgmt. Servs., 14-421 (La.App. 5 Cir. 11/25/14), 165 So.3d 147, 152; Sheffie v. Wal-Mart Louisiana LLC, 13-792 (La.App. 5 Cir. 2/26/14), 134 So.3d 80, 83-84, writ denied, 14-0881 (La. 6/20/14), 141 So.3d 813. The failure to prove any of the requirements enumerated in La. R.S. 9:2800.6 is fatal to plaintiffs cause of action. Upton v. Rouse’s Enter., LLC, 15-484 (La.App. 5 Cir. 2/24/16), 186 So.3d 1195, 1199, writ denied, 16-0580 (La. 5/13/16), 191 So.3d 1057. The merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. White v. Wal-Mart Stores, Inc., 97-393 (La. 9/9/97), 699 So.2d 1081, 1086. There is no provision in La. R.S. 9:2800.6 that permits a shifting of the burden to the merchant. Id.
To determine whether a condition is unreasonably dangerous, courts are required to consider the following factors in the risk-utility test: (1) the utility of the complained of condition, (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, (3) the cost to prevent the harm, and (4) the nature of the plaintiffs activities in terms of social utility or whether the activities were dangerous by nature. Bufkin v. Felipe’s La., LLC, 14-288 (La. 10/15/14), 171 So.3d 851, 856.
The second prong of the risk-utility test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. A defendant generally does not have a duty to protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it. Bufkin, 171 So.3d at 856; Broussard v. *357 State ex rel. Office of State Buildings, 12-1238 (La. 4/5/13), 113 So.3d 175, 184; Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533 (La. 2/20/04), 866 So.2d 228, 234. If the facts of a particular case show that the complained of condition should be obvious to all, the | ^condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. Upton, 186 So.3d at 1200.
An approximately three-foot high yellow warning cone containing the universal symbol for wet floor is considered adequate to alert a patron of a hazardous condition. Lee v. Ryan’s Family Steak Houses, Inc., 06-1400 (La.App. 1 Cir. 5/4/07), 960 So.2d 1042, 1047. See also, Melancon v. Popeye’s Famous Fried Chicken, 10-1109 (La.App. 3 Cir. 3/16/11), 59 So.3d 513, 515-516.
Merchants are required to exercise reasonable care to protect those who enter the establishment, to keep the premises safe from unreasonable risks of harm, and to warn person of known dangers. Richardson v. Louisiana-1 Gaming, 10-262 (La.App. 5 Cir. 12/14/10), 55 So.3d 893, 895. Whether protective measures in a particular business establishment are reasonable must be determined in light of the circumstances of the case, considering, commensurate with the risk involved, the merchant’s type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the business, and other considerations. Jackson v. Delchamps, Inc., 96-2417 (La.App. 1 Cir. 3/27/97), 691 So.2d 332, 335, writ denied, 97-1126 (La. 6/13/97), 695 So.2d 977. Although the owner of a commercial establishment has an affirmative duty to keep his premises in a safe condition, he is not the insurer of the safety of his patrons. Richardson, 55 So.3d at 895-896. A store owner is not liable every time an accident happens. Id. at 896.
The surveillance video clearly reveals that Corral had a two to three foot high, bright yellow warning cone placed in the ice cream/dessert area near the corner where Mrs. Bertaut alleged she slipped. Upon entering the restaurant and walking towards her table, which was near the warning cone, Mrs. Bertaut passed close to and looked directly at the bright yellow warning cone. The video subsequently clearly shows' Mrs. Bertaut passing close to and within a clear line of | fisight of the yellow warning cone five more times prior to the accident. Of the six times that Mrs. Bertaut passed close to the warning cone prior to her fall, Mrs. Bertaut walked three times over the exact place she alleged she slipped. It was not until the seventh time that Mrs. Bertaut fell. From the time the surveillance video began until Mrs. Bertaut fell (approximately 53 minutes), the tile she stepped on when she fell was traversed 63 times by numerous other patrons, many of whom were carrying ice cream, food, or drinks.
On de novo review of the motion for summary judgment, opposition, evidence, and testimony, we find Corral established Mrs. Bertaut would not be able to show that the condition (ie., an alleged puddle of water) presented an unreasonable risk of harm, or that Corral failed to exercise reasonable care pursuant to La. R.S. 9:2800.6.
First, the evidence does not show that there was water or any other substance on the floor where ‘ Mrs. Bertaut allegedly slipped at the corner. While Mrs. Bertaut alleged in her petition and testified in her deposition that she slipped in a puddle of water, she subsequently conceded that she did not know what was on the floor, how it got there, or how long it was there. She stated that after she fell, she looked back *358 and saw her pant leg was wet “because there was water there.” She testified her husband, Albert Bertaut, subsequently investigated the area and took photographs.[3] The surveillance video clearly shows that Mrs. Bertaut landed closer to the warning cone and away from the corner where she allegedly slipped in a puddle of water. As she fell, she testified, and the surveillance video shows, that she spilled what she was carrying. It is apparent from the surveillance video that Mrs. Bertaut’s pant leg did not get wet from the corner where she alleged she slipped. Michael Williams, the associate manager at the Golden Corral, testified |7he looked at the corner where she fell by the warning cone and did not see any water on the floor.[4] Additionally, Malcolm Clark, Corral’s 1442 deposition representative and director of operations, testified that based on the surveillance video and after speaking with Carlos Burns, the general manager, he denied that there was any water on the floor.
Even assuming the floor was wet at the corner where Mrs. Bertaut alleged she slipped, the bright yellow warning cone was placed adjacent to the corner where Mrs. Bertaut fell, and it was almost touching her feet after she fell. Mrs. Bertaut looked directly at the warning cone and passed within a clear line of sight of the warning cone five additional times before falling the seventh time. Mr. Burns stated that warning cones remain in walk areas and high traffic areas on a daily basis. While Corral's employees could not state why this warning cone was there on the day of Mrs. Bertaut’s fall, Mr. Williams and Mr. Bums both testified that warning cones are often left in the ice cream area on a daily basis. Based on the footage from the surveillance video, the corner where Mrs. Bertaut fell is a high traffic area, the warning cone is near the ice cream machine, where it is routinely placed, and it is within close proximity to the corner. The area in question was traversed approximately 63 times by patrons with ice cream, food, and drinks in their hands, prior to Mrs. Bertaut’s fall. An approximately three-foot high yellow warning cone containing the universal symbol for wet floor is considered adequate to alert a patron, or Mrs. Bertaut in this case, of a potentially hazardous condition.
IsSecond, Mrs. Bertaut cannot establish that Corral did not exercise reasonable care in the placement of the bright yellow warning cone. The surveillance video shows that the warning cone was placed within feet of the corner where Mrs. Ber-taut alleged she slipped and her foot al *359 most touched the cone where she fell. The deposition testimony established that warning cones are routinely placed in main walk areas with high traffic, warning cones are always placed near the ice cream machine because of the probability of spills periodically, and they are placed in areas to warn patrons of the possibility of spills or wet or slippery floors. While Mrs. Ber-taut denies seeing the warning cone until after she fell, the surveillance video clearly showed her looking directly at the warning cone and walking within feet of, and within a clear line of sight of, the warning cone multiple times prior to her fall. The reasonableness of the area where the warning cone was placed is therefore, supported by the video and the deposition testimony. Any lack of awareness of this bright yellow warning cone by Mrs. Bertaut was due to her inattentiveness. Because Corral successfully proved a lack of evidence for two requirements under La. R.S. 9:2800.6, the burden shifted to Mrs. Bertaut. Mrs. Ber-taut failed to sustain her burden of proof.
Accordingly, for the reasons stated above, the trial court’s judgment granting Corral’s motion for summary judgment is affirmed.
AFFIRMED

. In support of their motion for summary judgment, Corral attached and admitted into evidence a copy of Mrs. Bertaut’s petition, a video surveillance tape of the incident, and excerpts from Mrs. Bertaut’s deposition.

. In support of her opposition to Corral’s motion for summary judgment, Mrs. Bertaut attached the depositions of Mrs. Bertaut, Malcolm Clark, Michael Williams, and Carlos Burns, and the affidavit of Mrs. Bertaut’s husband, Albert Bertaut. The November 5, 2015 judgment granted Corral’s motion to strike Mr. Bertaut’s affidavit. Mrs. Bertaut did not appeal this ruling. Therefore, for purposes of this appeal, we do not consider Mr. Bertaut’s affidavit in opposition to the motion for summary judgment.

. The video shows that Mr. Bertaut took photographs of the area where the cone was originally situated and did not take photographs of the comer area where Mrs. Bertaut stepped as she fell. Two chairs and the bright yellow warning cone were covering the corner where Mrs. Bertaut alleged she slipped. Therefore, we do not find that the photographs establish that there was in fact water or any other substance on the floor.

. The surveillance video shows the bright yellow warning cone was in two locations. Initially, it was in the middle of the area near the ice cream machine. The surveillance video shows Mrs. Bertaut passing closely or in a line of sight, of the warning cone six times prior to her fall. She alleged she slipped at the corner of the ice cream area, not where the warning cone was initially placed. The warning cone was subsequently moved closer to where Mrs. Bertaut alleged she slipped. The parties appear to be unclear how or who moved the warning cone to the area where she slipped (the corner). A review of the surveillance video clearly shows that when Mrs. Bertaut was on the floor after her fall and trying to get up, she kicked the warning cone over to the corner area where she alleged she slipped. Additionally, this is corroborated by Mrs. Bertaut in her deposition testimony wherein she stated that she remembered pushing something over into the corner where she slipped.