PAMELA MIGLIORE WIFE OF AND TONY MIGLIORE

VERSUS

AMBASSADOR PARTNERSHIP, LLC,
MAC-LAFF, INC., HDI GLOBAL SPECIALTY
SE AND IAN PATTON

NO. 22-CA-599

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 88,714, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

December 01, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Stephen J. Windhorst

**<u>AFFIRMED</u>**
**JGG**
**RAC**
**SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
PAMELA MIGLIORE WIFE OF AND TONY MIGLIORE
 Stephen M. Chouest, Sr.
 J. Rand Smith, Jr.
 Kylie D. Faure

COUNSEL FOR DEFENDANT/APPELLEE,
AMBASSADOR PARTNERSHIP, LLC, MAC-LAFF, INC., EJBR
INVESTMENTS, LLC, HDI GLOBAL SPECIALTY SE, AND IAN PATTON
 James D. Hollier
 Ben L. Mayeaux
 Philip H. Boudreaux, Jr.

**GRAVOIS, J.**

In this slip and fall case, plaintiffs, Pamela and Tony Migliore, appeal the trial court's grant of summary judgment in favor of defendants, Ambassador Partnership, LLC, Mac-Laff, Inc., HDI Global Specialty SE, and Ian Patton, implicitly finding that plaintiffs failed to bear their burden of proof on summary judgment that they could prevail on their claims against defendants at trial. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In their petition for damages against defendants, plaintiffs alleged that on December 23, 2019, at approximately 1:15 p.m., Mr. Migliore slipped and fell in the dining area of the McDonald's restaurant on Ormond Boulevard in Destrehan, Louisiana, on a recently mopped floor as he arrived at his table, which was not "cordoned off," breaking his ankle. They alleged that the owner and manager of the restaurant failed to properly warn patrons of the slip and fall hazard created by the recently mopped floor.

In due course, defendants filed a motion for summary judgment asserting that plaintiffs cannot prove the essential elements of their claim. In support of their motion for summary judgment, defendants offered the following evidence: plaintiffs' petition for damages; the full depositions of plaintiffs Tony and Pamela Migliore, with attachments, including security videos of the subject incident from multiple camera positions inside of the restaurant; and Mr. Migliore's past medical records from Dr. Jorge Contreras, Ochsner Medical Center/Dr. Christo Arbonies, and Diagnostic Imaging Services/Dr. Brandt M. Zimmer; all of which evidence was duly introduced and accepted at the subsequent hearing on the motion. In opposition to the motion for summary judgment, plaintiffs offered their answers to defendants' requests for admission and interrogatories, which evidence was also introduced and accepted at the subsequent hearing on the motion, along with a

series of still photographs taken from the security videos of the subject incident that show Mr. Migliore walking from the entrance of the restaurant to his table, where he falls.

The record and briefs reflect that Mr. Migliore, who was 67 at that time and walked with a cane, accompanied by his wife, Pamela, who was 60 at that time, stopped at the McDonald's restaurant on Ormond Boulevard in Destrehan, Louisiana, to eat lunch. They frequented this restaurant often and liked to sit at a particular table by the windows on the far side of the restaurant from the entrance, along a wall of windows. Mr. Migliore testified in his deposition that the weather that day was a light drizzle. After entering the restaurant, Mrs. Migliore went to the counter to order their food, while Mr. Migliore proceeded by himself to the table they liked. Security videos taken that day, from multiple camera angles inside of the restaurant, show an employee mopping parts of the restaurant floor, and that seven yellow "wet floor" warning cones were placed in various positions around the entrance and dining area of the restaurant that had been mopped, five of which Mr. Migliore passed on the way to his table.

In his deposition, Mr. Migliore acknowledged seeing the cones and using that information to choose his path to his desired table. He testified that there was a yellow cone on the aisle before his table, but not one on the aisle with his table. The placement of the cones as described by Mr. Migliore is corroborated by the videos. Mr. Migliore testified that there was a little water in spots around the restaurant, but he stayed away from those areas. He stated that he did not notice any water or other wet substances in the area of his fall. Mr. Migliore did not observe anyone mopping the floor in the direct area where he fell. After he fell, when he was still on the floor, Mr. Migliore stated that he did not observe any water or other wet or slippery substances on the floor. He said that he noticed that his clothing was damp on his right arm and right leg, after he fell. Two patrons

who were nearby are observed on video getting up from their table to assist Mr. Migliore off the floor.

Mr. Migliore stated in his deposition that he was joined by his wife at the table after someone went to get her. The manager came to their table and they reported the incident. The manager offered to call an ambulance, which plaintiffs declined. They ate their meal and departed, using the same path as when they had entered. Mr. Migliore testified in his deposition that he did not recall any other restaurant employee coming over to the table with a mop or otherwise to clean up the floor after he fell. He stated that he went to urgent care either later that evening or the next day, where he was diagnosed with a broken ankle.

Plaintiffs' depositions and Mr. Migliore's medical records reveal that Mr. Migliore had a condition that made it difficult for him to walk, that he walked with the assistance of a cane (which he was using that day at the McDonald's), and that he had suffered several falls in the recent past.[1] He stated that he did not know what medical condition required him to use a cane. About six months prior to his fall at the McDonald's, Mr. Migliore had been hospitalized for approximately three weeks following an automobile accident wherein he suffered injuries to his pelvis, ribs, and right hip, which he testified were resolved at the time of his fall at the McDonald's. He stated that he had used a cane to walk prior to the automobile accident. He did not recall whether he had ever been treated for any condition regarding his balance, gait, lower extremities, or weakness in his legs. He remembered falling a few times in the past, but did not know the reasons why he fell. He did recall that he had never injured his ankle before.

---

[1] Mr. Migliore's medical records from his primary care physician Dr. Jorge Contreras were admitted into evidence as an exhibit. They reveal that Mr. Migliore had been diagnosed with muscular dystrophy and that he had a recent history of falling several times in the last few months, with his legs "giving out."

The video of the area of Mr. Migliore's fall does not show the floor by Mr. Migliore's feet, and thus does not show the condition of the floor where he fell. Nor is the quality of the video detailed enough to show the condition of the floor around his table. On the video, Mr. Migliore reaches his table and grasps the back of his chair. Next, his legs appear to collapse or buckle under him and he falls right behind the chair, to the floor, after which he is helped up by two patrons.

Mr. Migliore's deposition testimony, while hazy on certain matters such as his address, how long he had been using a cane, and exactly what medical condition caused his doctors to recommend that he use a cane, was clear that he saw the multiple warning cones in the restaurant, and that he also was determined and undeterred by the presence of the warning cones in his desire to sit at his particular table. ("As long as no one was sitting there, I was headed for that table.") Also, as he walked to the table, he was actively looking for water spots on the floor so he could stay away from them. He does not recall seeing any water where he fell, and opined that he would have noticed it. He appeared to conclude that he must have slipped on some water because his pants leg and his sleeve were damp after he got into his chair.

Mrs. Migliore testified in her deposition that her husband had no problems walking, or with falling, or that he had used a walker before the fall. However, it appears that her assertions to this effect were directly contradicted by Mr. Migliore's medical records from Dr. Contreras, as noted above.

A hearing on defendants' motion for summary judgment was conducted on August 12, 2022. At the conclusion of the hearing, the trial court granted summary judgment in favor of defendants. A written judgment granting summary judgment in favor of defendants and dismissing plaintiffs' claims against defendants with prejudice was signed by the trial court on September 30, 2022. This timely appeal followed.

On appeal, plaintiffs argue that the determination of "reasonableness" of the placement of "wet floor" warning cones by defendants should be made by the trier of fact, not by summary judgment proceedings. Plaintiffs argue that the trial court erred in finding that the "wet floor" warning cones' placement around the dining area was proper and reasonable to warn patrons of the alleged unreasonably dangerous condition, the wet floor. They also argue that summary judgment is precluded because the evidence showed that plaintiff Mr. Migliore actually considered the placement of the "wet floor" signs and used them to determine a safe path to his table.

## LAW AND ANALYSIS

"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

On appeal, our review of summary judgments is *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Bryant v. Ray Brandt Dodge, Inc.*, 19-464 (La. App. 5 Cir. 3/17/20), 292 So.3d 190, 195. Thus, appellate courts ask the same questions the

trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Breaux v. Fresh Start Properties, L.L.C.*, 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852.

A decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Bach v. Bd. of River Port Pilot Comm'rs*, 15-765 (La. App. 5 Cir. 5/12/16), 193 So.3d 355, 362.

In a slip and fall case against a merchant, the plaintiff bears the initial burden of proving each element of his cause of action under La. R.S. 9:2800.6(B). *Trench v. Winn-Dixie Montgomery LLC*, 14-152 (La. App. 5 Cir. 9/24/14), 150 So.3d 472, 475-76, citing *Flowers v. Wal-Mart Stores, Inc.*, 12-140 (La. App. 5 Cir. 7/31/12), 99 So.3d 696, 699; *White v. Wal-Mart Stores, Inc.*, 97-393 (La. 9/9/97), 699 So.2d 1081, 1082.

La. R.S. 9:2800.6 provides, in relevant part, as follows:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

* * *

Because a plaintiff must prove each of these elements, the failure to prove any element is fatal to the claimant's cause of action. *Id.*

This Court, and others, have determined that the reasonableness of a merchant's placement and use of warning cones for a wet floor, absent the existence of a genuine issue of material fact, is appropriate for determination on summary judgment. *See Bertaut v. Corral Gulfsouth, Inc.*, 16-93 (La. App. 5 Cir. 12/21/16), 209 So.3d 352, 354; *Collins v. Franciscan Missionaries of Our Lady Health Sys., Inc.*, 19-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 197, *writ denied*, 20-00480 (La. 6/22/20), 297 So.3d 773; *McDonald v. PNK (Bossier City), LLC*, 53,561 (La. App. 2 Cir. 9/23/20), 304 So.3d 143, 146, *writ denied*, 20-01416 (La. 2/9/21), 310 So.3d 179.

Likewise, there is no requirement, jurisprudential or otherwise, that a merchant must cordon off an area of the floor after mopping it. What a merchant must do is warn its customers of the wet floor, which McDonald's did by the placement of the seven yellow cones.

This Court has viewed the security videos carefully and fully. They reveal that despite the fact that Mr. Migliore testified that the weather that day was drizzling rain, he and his wife entered the restaurant without an umbrella. While this fact is not dispositive about the cause of his subsequent fall, it suggests that his clothes could have been dampened by the drizzle.

The videos also clearly reveal that the area by Mr. Migliore's table did not show any mopping taking place for at least thirty-one minutes before Mr. Migliore walked through the area on the way to his table. One video, which was positioned so that the Migliores' table was in the foreground and the video camera looked towards the far end of the restaurant (towards the entrance area of the restaurant), had the perspective of showing Mr. Migliore walking towards the camera, which

was positioned above and behind his table. That video recording begins around 13:18, and during the entire time until plaintiff fell, which occurred between 13:49 and 13:50, no employee is seen moping in the long aisle leading to Mr. Migliore's table that Mr. Migliore walked through to get there. The videos clearly show an employee mopping the floor on the left side (from the camera's perspective) of the dining area of the restaurant, an area not near Mr. Migliore's table and through which he did not walk. Yellow warning cones were placed in that area following the mopping. The video further shows an employee mopping the floor near the "top" of the video and placing cones in that area as well. The "top" of the video was an area through which Mr. Migliore walked on the way to his table, and the path he took was clearly marked by yellow cones. Mr. Migliore traversed this area without mishap.

Additionally, the videos further show that no other diners were eating anywhere near the Migliores' table, and moreover that no other customer, diner, or employee walked down or across the aisle to where the Migliores' table was located for the entire thirty-one minutes prior to Mr. Migliore's fall.

Another video, taken from the opposite side of the dining area of the restaurant, is positioned to show the area located at the "top" of the previously discussed video. In this video, the camera is mounted looking towards the dining area at the "top" of the previously described video, and the area around Mr. Migliore's table is generally visible in the distance, but not well visualized. The camera's perspective is behind Mr. Migliore and shows his back as he walks in from the entrance area of the restaurant, away from the camera, through the dining area at the "top" that had been mopped (with the warning cones present), and then on to the long aisle to his table that had not been mopped during the previous thirty-one minutes. As Mr. Migliore walks through this area, he uses his cane. Initially, he uses his left hand to steady himself by gripping a table on his left, with

his cane in his right hand. As he walks through, he switches his cane to his left hand so that he can grip the back of the booth seating that is located to his right. He again switches his cane as he approaches a column so that he can steady himself with this left hand on the column. (Mr. Migliore is also clearly seen grasping the column in the first video discussed previously.) The video then shows Mr. Migliore proceeding in the direction of his table. While Mr. Migliore is not clearly visible on this video as he reaches his table, as the sunlight from the windows hampers the quality of the video, it shows the diners nearby who saw or heard him fall getting up from their table to help him.

The two videos show conclusively that in the parts of the dining area that were mopped, warning cones were placed conspicuously. The aisle through which Mr. Migliore walked to reach his table had no warning cones placed on it, apparently because it had not been mopped within the thirty-one minutes before Mr. Migliore walked there. Under these factual circumstances, we find that the placement of the warning cones, in areas that had been recently mopped, was reasonable, and the lack of a cone in the aisle by Mr. Migliore's table was also reasonable, as that area had not been recently mopped nor traveled by anyone else who could have spread water. This conclusion is bolstered by the fact that Mr. Migliore himself testified that he did not see any water or spots of water where he fell, and that he was looking for them on the floor because he saw the warning cones placed where the videos show that an employee had recently mopped.

Upon *de novo* review, in light of the foregoing, we find that plaintiffs' assignments of error are without merit. The record reflects that the placement of "wet floor" warning cones by defendants was reasonable under the circumstances presented. We agree with the trial court's implicit finding that the "wet floor" warning cones' placement around the dining area was proper and reasonable to warn patrons of the alleged unreasonably dangerous condition, the wet floor.

Summary judgment is not precluded even though Mr. Migliore possibly considered the placement of the "wet floor" signs and used them to determine a safe path to his table.

In summary, we find that there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law.  We thus affirm the trial court's judgment granting defendants' motion for summary judgment and dismissing plaintiffs' claims against defendants with prejudice.

## DECREE

For the foregoing reasons, the judgment on appeal which dismissed the claims plaintiffs asserted against defendants is affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-599

### E-NOTIFIED

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
J. RAND SMITH, JR. (APPELLANT)          STEPHEN M. CHOUEST, SR. (APPELLANT)          BEN L. MAYEAUX (APPELLEE)
PHILIP H. BOUDREAUX, JR. (APPELLEE)

### MAILED

JAMES D. HOLLIER (APPELLEE)          KYLIE D. FAURE (APPELLANT)
ATTORNEY AT LAW                      ATTORNEY AT LAW
1001 WEST PINHOOK ROAD               4732 UTICA STREET
SUITE 200                            SUITE 100
LAFAYETTE, LA 70503                  METAIRIE, LA 70006